BERNARD, JUDAE & CO. *v.* UNITED STATES (No. 2800)[1]

EVIDENCE, WEIGHT, AND SUFFICIENCY—JUDICIAL NOTICE—SUN-BLEACHED RUSCUS—"CHEMICALLY TREATED."

Ruscus which has been treated with sulphur fumes to disinfect and dry it has not been "chemically treated" within the provision of paragraph 1419, Tariff Act of 1922, for "natural leaves, plants, shrubs, herbs, trees, and parts thereof, chemically treated." In the face of positive testimony that the ruscus was bleached by the action of the sun and dew (it being common knowledge that sun and dew *do* have such effect) and that the exposure to sulphur fumes was made after the bleaching, testimony by a chemist that sulphur fumes will bleach sugar-cane juice and cherries is entitled to little, if any, consideration. The ruscus is free under paragraph 1582 or 1622 as a crude vegetable substance.

[1] T. D. 41957.

United States Court of Customs Appeals, January 13, 1927

APPEAL from Board of United States General Appraisers, Abstract 51993

[Reversed.;

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.
*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

[Oral argument December 15, 1926, by Mr. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Sun-bleached ruscus imported at the port of New York was classified by the collector as natural leaves or plants chemically treated and assessed for duty at 60 per centum ad valorem under that part of paragraph 1419 of the Tariff Act of 1922, which reads as follows:

1419.  *  *  *  natural leaves, plants, shrubs, herbs, trees, and parts thereof chemically treated  *  *  *  not specially provided for, 60 per centum ad valorem.

The importer protested that the ruscus was not chemically treated and that it was free of duty either under paragraph 1582 as grasses and fibers not dressed or manufactured in any manner, and not specially provided for, or under paragraph 1622 as vegetable substances, crude or unmanufactured, not specially provided for.

The free-list provisions under which the importer claims that the goods are entitled to free entry are as follows:

FREE LIST

SEC. 201. That on and after the day following the passage of this act  *  *  *  the articles mentioned in the following paragraphs  *  *  *  shall be exempt from duty.

1582. Grasses and fibers: Istle or Tampico fiber, jute, jute butts, manila, sisal, henequen, sunn, and all other textile grasses or fibrous vegetable substances, not dressed or manufactured in any manner, and not specially provided for.

1622. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

The Board of General Appraisers overruled the protest and the importer appealed.

On the hearing before the board, William D. Notari testified on behalf of the importer to the effect that ruscus is a little plant which grows like grass and that while growing it is green in color; that goods of the kind imported are cut and exposed during the day to the hot sun of June and July and to the dew during the night in those months; that the exposure of the ruscus dampened by dew to the sun bleaches the ruscus and that it is not treated with lime *or any bleaching stuff;* that the ruscus after being bleached and before being packed

is placed on racks and exposed for a few hours to the fumes of burning sulphur which preserves *but does not bleach or change the color of the product;* that ruscus is treated with sulphur fumes for the purpose of preserving it during transportation.

Oreste Talini by deposition testified for the importer that he exported the ruscus in issue from Italy and that it was bleached by exposing it in the open fields to the sun's rays by day and to the dew at night for a period of from 10 to 20 days; that the ruscus *after being thoroughly bleached* was placed in a room having the windows thereof hermetically sealed and was there exposed to sulphur fumes for a period of 24 hours; that the ruscus was so treated in order to remove all moisture from the plant and to assist in its preservation; that the fumes of sulphur would "naturally disinfect the plant and kill any animal life existing thereon."

George W. Knight, Government chemist, testified for the Government that he was familiar with the chemistry of sulphur and more or less with its derivatives and compounds; that sulphur fumes is a chemical and is chemically known as sulphur dioxide gas; that the juice of sugar cane contains a red coloring matter and that that color is bleached out of the juice by treating it with sulphur dioxide fumes; that red cherries treated with sulphur fumes would be bleached; that the color of cherries so bleached may be restored by treating them with hydrogen peroxide; that the sulphur fumes accomplish the bleaching of red cane sugar and red cherries *by removing from the coloring matter sufficient oxygen to trioxidize* the fumes; that in his opinion a chemical reaction would result in case vegetable matter was exposed to sulphur dioxide but that *he could not say what chemical reaction would be produced;* that such chemical reaction *might result in a sulphur dioxide compound* or that it *might change the iron compound which produces the color;* that the exposure of vegetable matter to the fumes of sulphur for a period of 24 hours would tend to bleach it and that the exposure of vegetable matter to sulphur fumes would produce a chemical reaction on the coloring matter thereof; *that sulphur dioxide is a well-known fumigating material and destroys small animal life;* that he never made any experiments on ruscus leaves with sulphur dioxide but that *he had analyzed ruscus leaves treated with sulphur dioxide and found sulphur dioxide thereon;* that he had never experimented with sulphur dioxide on any vegetable matter other than cherries and the juice of sugar cane.

The testimony submitted by the importer established *prima facie* that the importation was bleached in the sun and that it was submitted to the sulphur fumes for no purpose other than the preservation of it during transportation and the destruction of any animal life which might impair its value prior to arrival at destination.   To

that testimony full faith and credit must be given unless its weight as evidence has been overcome by the testimony of the Government chemist.

In our opinion the testimony of Knight is not convincing, first, because although dried green ruscus was actually imported by Bernard, Judae & Co. at the same time as bleached ruscus, the witness failed to determine the effect of sulphur fumes on ruscus of either kind and preferred to testify to the effect of sulphur fumes on red sugar-cane juice and on red cherries, the coloring matter of which contains an oxide of iron; second, because the witness did not testify that the coloring matter in either green or sun-bleached ruscus contained an oxide of iron or any compound of iron; third, because the natural color of ruscus leaves is green and is not produced by iron or any of its compounds but by chlorophyll, the green coloring matter or leaf green of plants (see chlorophyll, chlorophyllin, and chlorophyllan, Standard Dictionary); fourth, because Knight analyzed ruscus leaves treated with sulphur fumes and found as the result of his analyses not trioxide of sulphur but dioxide of sulphur, the identical chemical to which the ruscus was exposed.

There is absolutely nothing in the testimony of the Government chemist which would justify us in concluding that sulphur fumes or dioxide of sulphur chemically affected in any way the ruscus or the coloring matter thereof. Chlorophyll contains nitrogen in addition to carbon, hydrogen, and oxygen and it may contain iron compounds, but that fact has not as yet been established by organic chemistry. See chlorophyll, 2 Watts' Dictionary of Chemistry (Morley & Muir) 122. The Government chemist did not venture to say that he had found iron in the coloring matter of the ruscus, and not knowing that any iron compound was natural to such coloring matter, it is evident that he could not know that the sulphur fumes applied to the ruscus had reacted on an iron compound and produced a new substance. His testimony that dioxide of sulphur would react on the iron oxide of the coloring matter of red cherries and red sugar-cane juice and strip the iron oxide of enough oxygen to change the dioxide of sulphur into trioxide of sulphur is entitled to no weight whatever, for the reason that his analyses of ruscus did not disclose trioxide of sulphur or iron in any form whatever. More than that he testified to nothing which established or tended to establish that the dioxide of sulphur used to fumigate the ruscus had combined with any constituent of the plant or with any component of its coloring matter. Testimony as to the effects of sulphur fumes on red sugar-cane juice and on red cherries, for the purposes of this case, is entitled to little, if any, consideration. The opinion of the Government chemist that dioxide of sulphur has a bleaching effect

on the color of green plants is not in accord with the recognized chemical authorities on the subject.

Sulphurous acid bleaches by masking the colouring matter, and in few cases only by its destruction. The colouring matters of many *blue* and *red* flowers, fruits, etc., form colourless combinations with sulphurous acid; but the colour is merely concealed, not destroyed; dilute acids, nitrous vapours diluted with air, chlorine, bromine, and iodine, and *the mere action of heat,* destroy the bleached sulphurous compounds, and the original colour reappears. The colouring matters of yellow flowers are not bleached by sulphurous acid. *The same is the case with the green of plants* (chlorophyll). Many dyed tissues, such as indigo blue and carmine, are at first not affected by sulphurous acid, but bleaching ultimately takes place, the colouring matters being oxidised under the influence of light. Bleaching with sulphurous acid, as it is industrially carried out, is not a *fast* but merely a fugitive process, which disguises the colours to the eye. On mere exposure to the air the sulphurous acid gradually disappears from the bleached goods, especially after previous friction, so that many bleached tissues resume their original colour spontaneously. Lunge recommends the removal of the fixed sulphurous acid by a weak solution of hydrogen peroxide. (Wagner's Chemical Technology (Crookes and Fischer), p. 817.) (Italics quoted as to the word "fast" only.)

The sulphurous acid mentioned in the foregoing quotation is more correctly designated as sulphur dioxide. Id. p. 251.

The bleaching of the ruscus in this case was a natural or grass bleaching and was, in our opinion, due in no degree to sulphur fumes. According to the authorities, natural or grass bleaching is apparently accomplished by ozone or, more accurately speaking, by hydrogen peroxide which is produced by the decomposition of water by the action of light. Id. p. 815.

The bleaching effect of the sun on green plants laden with dew is a matter of common knowledge, and as the sun and the dew charge nothing for their service their aid is quite naturally enlisted for the bleaching of ruscus. The ruscus having been bleached by exposure to the sun and dew, it can not be reasonably presumed that the producers of ruscus would purchase sulphur and incur additional expense to secure a result which had already been obtained without cost.

The term "chemical treatment" as used in paragraph 1419 does not mean the chemical treatment which is designed to disinfect the product, preserve it, or prevent its destruction by parasites or other alien organisms. It appears from the testimony in the record that a chemical bleaching of the plant would destroy the outer skin of the leaf and render it unavailable for the purpose for which it was produced.

As we understand it, ruscus is a product of southern Europe and is not produced in this country. The importation was not advanced by any manufacturing process and was nothing more than a crude vegetable substance or raw material designed to be used for manu-

facturing purposes in this country. It was, therefore, in our opinion, entitled to free entry under paragraph 1582. *United States* v. *Post,* 3 Ct. Cust Appls. 260, T. D. 32568; *United States* v. *Rice Co.,* 9 Ct. Cust. Appls. 165, 167, T. D. 37998; *United States* v. *Bayersdorfer & Co.,* 12 Ct. Cust. Appls. 377, 380, T. D. 40541.

The judgment of the Board of General Appraisers, now the United States Customs Court, is against the weight of the evidence and is *reversed.*