(C. D. 1608)

ASTORIA PAN-AMERICANA, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 14, 1954)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *Amos B. Sharretts* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: These protests, consolidated at the trial, involve merchandise described as ficin powder or leche de oje en polvo, imported from Peru on various dates in 1949. The collector assessed duty thereon at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as nonenumerated manufactured articles. It is claimed that the merchandise is properly dutiable at 5 per centum ad valorem under said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as nonenumerated unmanufactured articles, or at 5 per centum ad valorem under paragraph 34, as modified by said agreement, either directly or by similitude to papain. At the trial and in plaintiff's brief, the latter claim was stated to be made under paragraph 34, as modified by the trade agreement with the United Kingdom, T. D. 49753.

The pertinent provisions of the tariff act and the modifications thereof are as follows:

PAR. 1558. That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1558 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs), 5% ad val.

PAR. 34 [Tariff Act of 1930]. Drugs, such as barks, * * * and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: * * *.

PAR. 34 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. Drugs, such as barks, * * * and all other drugs of vegetable or animal origin (except halibut-liver oil); any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, and not containing alcohol, 5% ad val.

PAR. 34 [as modified by the trade agreement with the United Kingdom, T. D. 49753]. Dried pawpaw juice or papain, natural and uncompounded, not edible, and not specially provided for, but advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment what-

ever beyond that essential to proper packing and the prevention of decay or deterioration pending manufacture, and not containing alcohol, 5% ad val.

PAR. 1559 [Tariff Act of 1930]. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

At the trial, there were received in evidence the depositions of two witnesses taken at Iquitos, Peru, pursuant to a commission of this court. Alfredo Munoz R. stated that he has been connected with Astoria Importing & Manufacturing Co., Inc., Iquitos, Peru, and Compañía Astoria Peruana, S. A., since June 1944, as representative, with full powers, of the general manager. Jose O'Neill said that he has been connected with the former company since 1928 and with the latter as vice president and general manager since 1944. According to these witnesses, the latter company, among other things, produces ficin or oje powder. They described the process, with which they were familiar by reason of their duties, as follows: The oje tree (*ficus glabrata*) is cut down, the bark scored, and the sap or latex allowed to accumulate in tins, which are emptied into wooden barrels. Before delivering the liquid latex to the processing plant, leaves and other debris are removed, and acetic acid in the proportion of 40 cubic centimeters to each 5 gallons of liquid is added as a preservative. If this were not added, the latex would decompose in a few days, but with the acid, it keeps from 2 to 3 months. At the plant, the latex is filtered to remove wax. To aid the filtering, a substance called supercell powder is added in the proportion of 10 per centum by weight of the latex. It prevents the wax from sticking to the filter and impeding the filtering action. The wax is removed because it contains no ficin and has no commercial use. After the filtering process, the wax, the supercell powder, and debris remain in the filter. This residue has no use. The filtered material is then placed in a turbo-sprayer which sprays it into a heated chamber. It is thus volatilized, and the solid content falls, in the form of powder, into aluminum containers. These are emptied into kraft paper bags, which are placed inside special metal drums for shipment. During the processing, 20 to 25 per centum wax is removed and 60 to 62 per centum water.

The witnesses testified that the liquid latex must be processed within 2 months after the time it is received at the plant because, if kept longer, it decomposes and loses its desired properties. It acquires an extremely bad odor and a blackish color, and it produces less ficin powder and the amount produced is not of the required quality. According to instructions from Merck & Co., Rahway,

N. J., owner of the plant, certain tests had to be made to determine the activity of the spray-dried ficin. The product was required to resemble klim milk powder in color and physical composition and to have a slight cheeselike odor.

At the trial, John J. Donahue, vice president of the plaintiff company, testified that he has been familiar with merchandise of this type for 15 years. He purchases it from Compañía Astoria Peruana, S. A., and, so far as he knows, no one else produces it, and no one other than his firm imports it. It is imported only in powder form. He stated that some time ago he had a sample of the liquid latex sent from Peru but when he opened the bottle, the contents squirted all over, as fermentation had set in. The liquid had a black collar on top, indicating that it had begun to decay, and had a foul odor.

Mr. Donahue stated that he obtained a sample of ficin powder from a shipment which came into the United States at Idlewild Airport in January 1953, and sent it to Mr. Earl Stewart of Schwarz Laboratories in Mount Vernon, N. Y. While the sample did not come from one of the shipments involved herein, Mr. Donahue stated that it was representative of the merchandise before the court. When recalled to the stand later, he explained that all ficin powder exported from Peru to the United States is tested in the same manner and has to meet the specifications established by Merck & Co.

On cross-examination, Mr. Donahue testified that this merchandise had never been dried by any other method than spray drying. He explained that drum or tray drying of the liquid latex would permit decomposition, which would make the finished product unusable. In his opinion, the spray process is the only method of drying that will produce ficin powder in merchantable form, whether powder, lump, or any other form. This method results in dehydrating and powdering the material all in one operation.

Mr. Donahue also testified that the only use for the latex of the *ficus glabrata* tree is the production of ficin powder. The liquid is known as leche de oje, that is, milk of the oje tree, and the final product is called ficin, a trade name, or leche de oje en polvo (milk of the oje tree in powder).

Earl D. Stewart, chief chemist for Schwarz Laboratories, Inc., Mount Vernon, N. Y., testified that his company is a firm of consulting analytical chemists in the manufacturing of chemical specialties for the brewing industry and chemicals derived from yeast. He directs the work of the laboratory and decides what is to be done on samples submitted by customers and clients and carries out research problems. He received the degree of master in the science of chemistry from the California Institute of Technology in 1925 and is a member of the American Chemical Society, the Institute of Food Technologists,

the American Pharmaceutical Society, and the American Society for Quality Control.

Mr. Stewart testified that he is familiar with ficin powder, knows its properties, and has studied chemical references relating to it. He stated that he had received the sample sent by Mr. Donahue in January 1953, and had had an analysis made of it under his supervision. A written report of the analysis was received in evidence as plaintiff's exhibit 2.[1] From the analysis, the witness concluded, first, that the material is essentially proteinase; second, that it is a product which is of plant origin or plant juice of some kind; and, third, that no mineral matter had been added during its preparation. He found also that it had enzyme activities, probably of a proteolytic nature, and that it did not contain any great amount of added acids. According to the witness, the product is commercially valuable as a proteolytic enzyme, that is, it produces or accelerates a splitting of proteins into simpler and soluble products, as in digestion. Such a product is unstable, he said, but it is more unstable when in liquid form. Products of this type are used in the chill-proofing of beer, the manufacture of leather, in medicine, in the preparation of food products where protein digestion of the food is desired, in certain kinds of dry cleaning for textile work, and in tenderizing meat.

Mr. Stewart testified that the process applied to the latex is desirable for the reason that, unless the liquid latex is put into a dry state promptly, its commercially valuable properties are reduced or lost. Other methods of drying would also have this result. He explained further that when a liquid containing a vegetable wax is spray dried, the particles of powder become coated with wax, the product is insoluble in water, and is less useful as an enzyme.

The witness said that he was familiar with a product known as papain and that it has properties similar to ficin powder, but is derived from a different plant, the papaya.

Lawrence E. Stout, Jr., called as a witness for the defendant, testified that he is group leader of the Chemical Engineering Department of Colgate-Palmolive-Peet Co. and that his duties include research work in the field of spray drying. He then described various types of spray drying and stated that spray drying produces a material which is in powder form.

The chief question before us is whether the imported merchandise, ficin powder, is an unmanufactured or a manufactured article. The evidence establishes that it is derived from the latex of the oje tree

---

[1] Objection was made to the introduction of the written analysis on the ground that the sample was not taken from one of the shipments involved and that the remaining portion of the sample had not been produced. The objection was overruled on the understanding that it would be produced later. The sample was received in evidence subsequently and objections to its competency overruled.

(*ficus glabrata*) by filtering to remove debris and wax and by spray drying the filtered material. All that is taken out is debris, wax, and water; all of the useful elements remain. The record indicates that the wax is not a part of the ficin and has no commercial use and that the latex cannot be shipped in liquid form, but must be dried in order to preserve its commercially valuable properties. There is also evidence that the only feasible method of drying the materials is by spray drying, which results in the powdered form. Other methods of drying would reduce the desirable qualities of the material.

In the filtering operation, debris is removed. The removal of the debris is clearly a cleansing, not a manufacturing, process. *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296; *United States* v. *Salomon*, 1 Ct. Cust. Appls. 246, T. D. 31277; *United States* v. *Brown & Co.*, 10 Ct. Cust. Appls. 47, T. D. 38295; *Passaic Worsted Co.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916.

The filtering process also removes the wax. According to the record, this is done because the wax is not part of the ficin and has no commercial use. It was also stated that if the powder particles were coated with wax, the product would be less desirable. The wax had to be removed, therefore, to get the useful article, ficin, by itself.

It has long been held that an operation which is necessary to get an article of commerce by itself is not a manufacturing process. *United States* v. *Sheldon & Co.*, 2 Ct. Cust. Appls. 485, T. D. 32245; *Cone & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 133, T. D. 41672; *United States* v. *United States Rubber Co.*, 31 C. C. P. A. (Customs) 174, C. A. D. 269; *V. W. Davis* v. *United States*, 10 Cust. Ct. 189, C. D. 751; *J. E. Bernard & Company, Inc.* v. *United States*, 30 Cust. Ct. 122, C. D. 1509.

In *United States* v. *Sheldon & Co.*, *supra*, it was held that gum resin or rosin, obtained after separating out the turpentine and impurities from raw rosin, was a crude rather than an advanced drug and that the processes applied to the raw rosin had been necessary to get the desired article by itself. The operations in the instant case, which were less complex, did no more than to get ficin by itself.

See also *United States* v. *Godwin*, 91 Fed. 753, which involved powder obtained from the juice of the papaw melon. To secure the material, the juice from the melon was caught in pans, dried in the sun, sifted to take out foreign substances, and packed in tins. The court stated:

* * * Drying in the sun was not refining, nor a process of manufacture. * * * Neither was the sifting out of mechanical impurities. It had no effect upon the article itself, other than to get it by itself.

In the instant case, the material, after filtering, is subject to another process, spray drying, by which it is dried and rendered into powder

form. The evidence establishes that this must be done in order to preserve the essential characteristics of the merchandise during transportation. For that reason, it cannot be considered a manufacturing process. *United States v. Albers Bros. Milling Co. and Geo. S. Bush & Co.*, 19 C. C. P. A. (Customs) 88, T. D. 45226; *United States v. C. J. Tower & Sons*, 17 C. C. P. A. (Customs) 90, T. D. 43427; *Bernard, Judae & Co. v. United States*, 14 Ct. Cust. Appls. 323, T. D. 41957.

Defendant claims that "the reduction of the natural latex liquid to powder, drying and pulverizing in one operation by means of the turbo-spray drier; the increase in value; deriving a new name, in addition to the other elements required to produce the pre-destined product herein resulted in a manufacture." In regard to these points, we note, first, that the reduction of the liquid latex to powder was incidental to the only feasible method of drying the merchandise, which drying was necessary to preserve its essential properties during transportation. Second, the only increase in value mentioned by the witnesses is the cost of the processing, which, as has been pointed out. was required to get the article of commerce by itself and preserve it during transportation. The merchandise, as imported, was not so advanced as to be dedicated to one particular use, but was used for various different purposes. Third, the merchandise in liquid form was known as the milk of the oje tree (*ficus glabrata*) or leche de oje, and in powder form as milk of the oje tree in powder (leche de oje en polvo) or by its trade name, ficin powder. It has not acquired a new name denoting a new article of commerce. Moreover, a change of name does not always indicate a new manufacture. *United States v. Dudley*, 174 U. S. 670.

Defendant relies upon *United States v. Half Moon Manufacturing & Trading Co.*, 24 C. C. P. A. (Customs) 232, T. D. 48668. That case involved the classification of vegetable albumen or gluten, which was obtained when wheat flour was mixed with water and kneaded, and the starch washed out in a washing machine. The residue remaining in the washing machine was the imported vegetable albumen. The court stated that the process was used for the separation of the two constituents of wheat flour, starch and gluten, each of which was sought for its valuable properties. It was held that the gluten was a byproduct obtained in the manufacture of starch, rather than a waste or an unmanufactured article. In that case, the processing was undertaken to obtain starch, not to get gluten by itself. Whether or not gluten was a natural product separated out by the process was not considered by the court.

In the instant case, the product sought was ficin, which was gotten by itself and the residue discarded.

For the reasons stated, we conclude that the merchandise, as imported, is an unmanufactured article.

Plaintiff's alternate claims under paragraph 34, as modified, directly or by similitude to papain, are untenable. The record does not establish that the merchandise herein is a drug, in accordance with the definition in that paragraph. *Van Gelder-Fanto Corp.* v. *United States,* 41 C. C. P. A. (Customs) 90, C. A. D. 534; *E. F. Drew & Co.* v. *United States,* 41 C. C. P. A. (Customs) 101, C. A. D. 536. The express limitation of the paragraph to drugs, as defined therein, forbids the classification of other articles thereunder by similitude. *Fensterer & Ruhe* v. *United States,* 1 Ct. Cust. Appls. 93, T. D. 31110; *Akawa, Morimura & Co.* v. *United States,* 11 Ct. Cust. Appls. 418, T. D. 39432; *Cresca Co. (Inc.)* v. *United States,* 17 C. C. P. A. (Customs) 83, T. D. 43376; *C. H. Arnold & Co.* v. *United States,* 20 C. C. P. A. (Customs) 417, T. D. 46259.

On the record presented, we hold that the instant merchandise, ficin powder, is properly dutiable at 5 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as a nonenumerated unmanufactured article.

The protests are sustained and judgment will be rendered accordingly.