(C. D. 1839)

B. Shackman & Company
S. Stern Henry & Company } *v.* United States

United States Customs Court, First Division

(Decided January 17, 1957)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* and *Richard F. Weeks* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar was classified under paragraph 218 (f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, by similitude, as articles of glass, blown or partly blown in the mold, and assessed with duty at the rate of 50 per centum ad valorem. Plaintiffs claim the merchandise is properly dutiable, by similitude, as articles in chief value of cellulose acetate under paragraph 31 (a) (2), as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at the rate of 20 per centum ad valorem. Alternatively, plaintiffs claim that the involved merchandise is classifiable under the provisions of paragraph 1558 of the tariff act as "articles manufactured, in whole or in part, not specially provided for," at the rate of 20 per centum ad valorem.

A sample of the merchandise herein, invoiced as "Paper Weights," was received in evidence as plaintiffs' collective exhibit 1. The samples in evidence representative of the invoice description are articles in cube form containing water, certain figures, such as a "snowman" etc., and a very fine white powdery substance, which, on shaking, shows the so-called paper weights as simulating a snowstorm. It was stipulated that the articles in question are composed in chief value of a plastic known as polystyrene (R. 10). There was further introduced in evidence, as plaintiffs' collective illustrative exhibit 2, two samples of watch crystals made of cellulose acetate (R. 17).

Two witnesses testified, both of whom were called by the plaintiffs. The first witness was Mr. Edward Morris, secretary and general manager of B. Shackman & Company, importer of toys, novelties, and giftware. The witness testified that he was familiar with the involved merchandise. He identified plaintiffs' collective exhibit 1 as representative of the goods here imported.

Plaintiffs' second witness was Dr. Ernest R. Hanson, director of the plastics division of Foster D. Snell, Inc., chemist and engineer. He had received the degree of doctor of philosophy in chemistry from Northwestern University and, for 20 years, had been employed as chief chemist by the Bakelite Corp. in various manufacturing operations, in which connection he had tested and become familiar with various plastic substances, having had occasion to compare, among others, the characteristics of polystyrene and those of cellulose acetate compounds (R. 14). He had also, in such employment, tested and

compared the properties of the aforesaid plastic materials with non-plastic materials, such as glass.

Plaintiffs' witness Hanson testified that he had made a comparison of a polystyrene article, such as plaintiffs' collective exhibit 1, with the cellulose acetate watch crystals, as represented by plaintiffs' collective illustrative exhibit 2, for the purpose of comparing "resin properties" (R. 16). He stated that polystyrene is a coal-tar product made from styrene monomer, derived from benzene, which is obtained from coal tar; that the primary constituent of glass is sand; and that cellulose acetate, such as plaintiffs' collective illustrative exhibit 2, is made from cotton cellulose.

Further explaining the differences between the material, polystyrene, of which the imported merchandise is composed, and glass, plaintiffs' witness testified that polystyrene is an organic material, whereas glass is made from an inorganic material; polystyrene softens and melts at about 100 degrees centigrade, while glass can be heated up to about 1,000 degrees centigrade; polystyrene, unlike glass, burns; polystyrene is not as hard and brittle as glass. Both materials are alike, in that they are transparent (R. 25–28).

Testifying as to the properties of cellulose acetate and the material, polystyrene, plaintiffs' witness stated that the two materials belong to the family of thermoplastic materials and, thus, can be heated, put into an injection molding machine, and formed into various types of articles. He further stated that cellulose acetate, unlike glass, is an extremely tough material, will burn, and is resistant to breakage. The witness then concluded by stating that, based upon the properties described, the material in plaintiffs' collective exhibit 1 more closely resembles the material, cellulose acetate, rather than the material, glass (R. 30); that, "assuming" an article like collective exhibit 1 in form, but composed of glass, and an article like collective exhibit 1 in form, but composed of cellulose acetate like collective illustrative exhibit 2, the two exhibits, plaintiffs' collective exhibit 1 and plaintiffs' collective illustrative exhibit 2 "would look alike" (R. 32).

With respect to the texture of polystyrene and that of cellulose acetate, plaintiffs' witness testified that they are similar in texture, because of the "feel" of the materials and their general molding characteristics; that, with respect to elasticity, they are different, in that the acetate is more elastic than polystyrene, but that both polystyrene and cellulose acetate have more elasticity than glass (R. 33–35).

On cross-examination, plaintiffs' witness Hanson testified that he had not seen an article like plaintiffs' collective exhibit 1 made of glass, nor had he seen such an article made of cellulose acetate. He stated that his answers, heretofore given, in comparing articles of glass and those made of cellulose acetate, were "strictly on a hypothetical basis" (R. 35). He further testified that the feel of the plastics

and glass would depend on the temperature of the room and agreed that "that would be no valid distinction between glass and cellulose acetate or any other plastic"; that the comparison made by him between cellulose acetate and polystyrene would apply to the whole field of plastics, in that all the thermoplastics, such as cellulose acetate and polystyrene, are organic; that they would burn, would distort when subjected to heat, and that all have varying toughness. The witness stated that, chemically, the comparison between polystyrene and cellulose acetate is that "they are carbon and hydrogen atoms" (R. 37). He agreed, however, that wood and, for that matter, most of the plastics are of carbon and hydrogen composition. Further, plaintiffs' witness qualified previous testimony given that, when glass breaks, the splinters cut readily, stating that not all glass will give splinters when it shatters (R. 38).

The record in this case fails to establish that the component of the imported merchandise, polystyrene, is similar either in material, quality, texture, or use to the material, cellulose acetate. Polystyrene is a coal-tar product, whereas cellulose acetate is made from cotton cellulose. These materials are likewise different in quality. Further, as to texture, the only similarity claimed is that both materials are alike in appearance. With respect to the use of polystyrene and that of cellulose acetate, both materials exhibit only the characteristics which are common to all plastics.

The fact that polystyrene, the substance of which the imported articles are composed in chief value, and the material, cellulose acetate, are both members of the plastic family, as indicated by the testimony, heretofore referred to, is not decisive in the determination of the merchandise under consideration. *Rolls Razor, Inc.* v. *United States*, 6 Cust. Ct. 271, C. D. 480. Such similarity between the materials in question exhibits only the general characteristics that plastics have towards each other and is insufficient to predicate classification of the imported merchandise, by similitude, to "Cellulose acetate, * * * Made into finished or partly finished articles * * *" within the provisions of paragraph 31 (a) (2) of the Tariff Act of 1930, as modified *supra*, under which plaintiffs claim the merchandise should be held dutiable.

The pertinent language of the similitude clause at the time of importation herein, which both plaintiffs and defendant herein invoke as applicable to the imported merchandise, is as follows:

That each and every imported *article*, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any *article* enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated *article* which it most resembles in any of the particulars before mentioned; * * *. [Emphasis supplied.]

It would, accordingly, appear from the language of the provision in question that the aforesaid similitude clause concerns itself with "articles" which are not enumerated in the tariff act. The language of this provision further presupposes that there is some article actually in existence which is covered by an enumeration in the tariff act, as to which the nonenumerated article subject to classification is similar in certain specified characteristics, namely, material, quality, texture, or the use to which it may be applied. The record in the case at bar, however, lacks any proof that cellulose acetate is ever made into articles such as the imported merchandise (plaintiffs' collective exhibit 1), and, in our opinion, plaintiffs' failure in this respect precludes a finding that the imported merchandise is dutiable under paragraph 31 (a) (2) of the Tariff Act of 1930, as modified, *supra*, as claimed.

Counsel for the plaintiffs, in their brief, page 11, assert that "the claim is for cellulose acetate made into *articles*. The specific nature of the article is of no legal importance. Its classification rests on the material of which it is made." [Italics supplied.] Plaintiffs herein apparently predicate their claim that the imported merchandise is dutiable, by similitude, under the provisions of paragraph 31 (a) (2) of the Tariff Act of 1930, as modified, *supra*, for "Cellulose acetate, and compounds, combinations, * * * Made into finished or partly finished articles of which any of the foregoing is the component material of chief value, * * *" on the basis that the similitude provisions of the act require a comparison of "materials" rather than "articles." In our opinion, however, this contention is untenable, since, if classification of the merchandise here involved depended upon the material of which it was composed and not upon its primary existence as an "article," there would be no reason at all for invoking the similitude provisions in this case. The record establishes that the imported merchandise is composed in chief value of polystyrene, which is a coal-tar product made from styrene monomer, derived from benzene, which is obtained from coal tar (R. 19). As such, the material in question would, under the plaintiffs' theory, properly find classification directly under the provisions of paragraph 28 (a) of the Tariff Act of 1930 as a coal-tar product. *United States* v. *Esso Standard Oil Co.*, 41 C. C. P. A. (Customs) 171, C. A. D. 546.

In *B. K. Elliott Company* v. *United States*, 34 Cust. Ct. 121, C. D. 1690, certain slide rules, produced from a substance known as polyvinyl chloride, were classified under paragraph 360 of the Tariff Act of 1930 as mathematical instruments, composed of metal, by operation of the similitude provisions in paragraph 1559 of said act, with a duty assessment at the rate of 40 per centum ad valorem. Plaintiff claimed that the articles were properly classified, by virtue of said similitude provisions, at the rate of 20 cents per pound and 25 per centum ad valorem under paragraph 33 of said act, as modified, as

compounds of casein, known as galalith, or by any other name, made into finished or partly finished articles. In overruling the plaintiff's claim, the court, page 127, stated:

While the plaintiff has introduced evidence in support of similitude to compounds of casein, known as galalith, said testimony would only support a conclusion of similitude to a *material*. There has been no evidence offered to indicate a similitude to specific *articles*, the component material in chief value of which is compounds of casein. [Italics quoted.]

The reasoning employed by the court in the *B. K. Elliott Company* case, *supra*, is equally applicable in the case at bar and calls for a conclusion consistent with the finding therein. Here, while the plaintiffs have introduced evidence in support of their claim as to similitude concerning the material, polystyrene, and the material, cellulose acetate, this testimony would only support a conclusion of similitude to a material, and, as heretofore observed, there has been no evidence offered to indicate a similitude to specific articles, the component material in chief value of which is cellulose acetate, and this deficiency, as previously stated, is, in our judgment, fatal to the plaintiffs' claim for classification of the imported articles under paragraph 31 (a) (2) of the Tariff Act of 1930, as modified, *supra*.

With respect to the collector's classification of the involved articles, the record, in our opinion, sufficiently establishes that the substance, polystyrene, of which the imported articles are composed, is different in material, quality, and texture from glass. Polystyrene is a coal-tar product made from styrene monomer, derived from benzene, which is obtained from coal tar, whereas glass is made from sand. Polystyrene has more elasticity than glass. Further, it appears that polystyrene is not as hard and brittle as glass. With respect to use of the material, polystyrene, and that of glass, apparently the only similarity that can be attributed to each is the adaptability of each material to be converted into an article. This superficial sameness is far too general as to justify classification of the imported articles, by similitude, to articles of blown glass. Adoption of the common characteristic of adaptability of use of polystyrene and glass as materials that can be converted into an article as sufficient ground to establish similarity of use between the two for similitude purposes, would lead to the unwarranted conclusion that any two articles are similar and subject to the similitude provisions, provided merely that they can be used to be manufactured into an article.

The above observations have to do with the plaintiffs' contention that, with respect to at least the material of which polystyrene and glass are composed, the two materials are dissimilar so as to preclude the application of the similitude provisions of the tariff act.

The plaintiffs in the case at bar, in further disputing the correctness of the collector's classification, contend that classification under para-

# **36**

graph 218 (f), insofar as the form of glass is concerned, is limited to that which is "blown or partly blown in the mold," whereas the imported material "is molded rather than blown into form," and maintain that classification under paragraph 218 (f), by similitude, should be confined to articles composed of a material derived or processed in a manner and by a process similar to blowing or otherwise inflating. It appears from the testimony in the case at bar that the material, polystyrene, is put into an injection molding machine and formed into various types of articles (R. 28).

In *United States* v. *Bush & Co. et al.*, 9 Ct. Cust. Appls. 160, T. D. 37996, our appellate court accepted the interpretation of the Government that predecessor paragraph 84 of the Tariff Act of 1913 for glass articles "includes such articles only as are composed wholly or in chief value of glass which is ornamented, decorated, or *processed in the manner prescribed therein*." [Italics supplied.] While the similitude provisions of the pertinent act were not there involved, the court, in passing upon the limitations imposed upon articles classifiable under the paragraph in question, page 161, stated:

> In our opinion the glass of which these trays are in chief value composed is not ornamented, decorated, or processed in any of the ways specified in the paragraph, nor in any manner ejusdem generis therewith. The glass panes are themselves entirely plain, being merely pieces of common window glass. The decorative threads, leaves, and butterflies are not attached in any manner to either of the two pieces of glass, but are simply placed between them and are held there by pressure when the glass panes are fastened into the frame of the tray. The glass itself is totally unchanged in character by this treatment, nor can it be said that anything has even temporarily been added to it, or that it has been altered in character or condition. According, therefore, to the interpretation which is above placed upon the paragraph, this treatment would not bring the articles in question within the paragraph as articles composed wholly or in chief value of ornamented, decorated, or *processed* glass. [Italics supplied.]

In *Cresca Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 83, T. D. 43376, our appellate court announced the following rule concerning the similitude provisions of the tariff act:

> * * * Early in the history of this court a rule was adopted as to the application of the doctrine of similitude, which has proved to be a safe one and has not been departed from. In *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110, Hunt, J., speaking for the court, discussed the somewhat divergent opinions of the Federal courts on this subject and finally adopted the rule laid down in *Schoenemann* v. *United States*, 119 Fed. 584, to this effect:
>
> > * * * when the statute expressly prescribes a duty for this material, when it is in a certain condition, it must be taken to preclude the application of the similitude statute to the same material not in that condition.
>
> To the same effect are *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432; *United States* v. *Neuman & Schwiers Co.*, 6 Ct. Cust. Appls. 228, T. D. 35467.

The principle announced above was likewise relied upon in *Astoria Pan-Americana, Inc.* v. *United States*, 32 Cust. Ct. 243, C. D. 1608.

While it appears that the principle set forth in the above cited cases relates to merchandise the same as that covered by the relevant paragraphs when in a certain condition, we are of opinion that the rule applies with equal force to merchandise as to which similarity is claimed under a tariff enactment, by virtue of the similitude provisions of the act.

Merchandise, to be classifiable under paragraph 218 (f) of the Tariff Act of 1930 as "articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise," must be confined to articles composed of a material derived or processed in a manner similar to a blowing or otherwise inflating process. *L. E. McCullough & Company* v. *United States*, 36 Cust. Ct. 127, C. D. 1763. The record in the case at bar indicates that the imported material is molded, rather than blown, into form, a condition which, in our opinion, precludes classification of the involved articles by similitude to merchandise classifiable under paragraph 218 (f), *supra*.

In *Morgenstern & Goldsmith* v. *United States*, 10 Treas. Dec. 314, T. D. 26733, the Board of General Appraisers had before it the question of classification of certain umbrella handles made of "gallilith," which were classified for duty purposes by similitude to manufactures of horn and which were claimed properly dutiable as nonenumerated manufactured articles, not otherwise provided for. In disapproving the classification, the board therein, page 315, stated:

It is in evidence, and in fact it may be said to be within common knowledge, that horn is manufactured into many articles other than umbrella handles. If, therefore, the merchandise in question—concededly made of a substance other than horn, but which in form and use is similar to umbrella handles made of horn— falls within the blanket provision for manufactures of horn in said paragraph 449, it would follow that numberless other articles made from probably as many substances into as many forms, not enumerated in the tariff act, would be dutiable by similitude as the merchandise in question was assessed, and we hardly think that such is the law or that Congress so intended.

Plainly, we do not think that the provision in the tariff act for manufactures of horn is such an enumeration as warrants the application of the similitude clause to an imported article, not provided for, manufactured of a substance altogether different from horn in material, quality, and texture.

Umbrella handles similar in form, and of course for the same use, are made also of wood, celluloid, mother-of-pearl, and metal, all of which materials are provided for in the same general way as manufactures of horn (paragraphs 17, 193, 208, and 450), and such being the fact the question naturally arises, why apply the similitude clause in the assessment of duty at the rate for manufactures of horn in preference to the rates provided for manufactures of these other materials? Such an application of the similitude clause as has been made in this case seems to us to be altogether unjustified.

In the case at bar, the record establishes substantial differences in material, quality, and texture between articles of blown glass and merchandise such as that here imported. Accordingly, the reason-

ing adopted by the board in the *Morgenstern* case, *supra*, is equally applicable to the imported merchandise. It may be said to be within the common knowledge that the substance, glass, produced by a blowing process, is manufactured into many articles other than so-called paper weights, which is indicated as one of the uses of the imported merchandise. It may further be observed that paper weights, so called, similar in form and for the same use as paper weights of glass, "blown or partly blown in the mold or otherwise," are made also of metal and other substances, which materials are provided for generally in the tariff act. The application of the similitude provisions to the imported merchandise, therefore, with a consequent assessment of duty at the rate provided under paragraph 218 (f), *supra*, for articles of blown glass, on the basis of an indicated use of the imported articles as paper weights similar to the use of certain articles of blown glass, in preference to the rates provided for manufactures of other materials, which manufactures are also used as may be the imported articles, namely, as paper weights, is not, in our opinion, justifiable. See, in this connection, the latest expression of our appellate court in *Maher-App & Company* v. *United States*, 44 C. C. P. A. (Customs) 22, C. A. D. 630, decided November 30, 1956.

The fact that the merchandise here in question may have a use as paper weights, as have certain blown glass articles, as alleged by the defendant, is not alone sufficient, in our judgment, to classify it dutiable by similitude to articles of blown glass. A mere showing that the general usage of two comparable products is similar is not sufficient to invoke the similitude provisions. *Roovers Bros., Inc.* v. *United States*, 23 Cust. Ct. 53, C. D. 1190. See also *Holeproof Hosiery Co.* v. *United States*, 27 Cust. Ct. 176, 177, C. D. 1366.

For the reasons aforesaid, we hold that the involved merchandise is not dutiable, by similitude, under paragraph 218 (f) of the Tariff Act of 1930, as modified, *supra*, as "articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise," as classified, nor classifiable, by similitude, under paragraph 31 (a) (2) of the said act, as modified, *supra*, as "Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate: * * * Made into finished or partly finished articles of which any of the foregoing is the component material of chief value." Not being elsewhere specially provided for, we hold the merchandise in question properly classifiable under the provisions of paragraph 1558 of the Tariff Act of 1930 at the rate of 20 per centum ad valorem as "articles manufactured, in whole or in part, not specially provided for," as alternatively claimed by the plaintiffs. To the extent indicated, the claim in these suits is sustained. In all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.