**BEAUTI–VUE PRODUCTS COMPANY,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**
**C.D. 2987; Protests Nos. 62/19724, etc.**

United States Customs Court
First Division.

Decided on Rehearing May 2, 1967.

Wallace & Schwartz (Earl R. Lidstrom and Joseph Schwartz, Chicago, Ill., of counsel), for plaintiff.

Barefoot Sanders, Asst. Atty. Gen. (Charles P. Deem and Brian S. Goldstein, New York City, Trial Attys.), for defendant.

Before RAO, Chief Judge, and OLIVER and WATSON, Judges.

RAO, Chief Judge:

When this case was originally before the court, the protests were overruled without affirming the collector's classification. Beauti-Vue Products Company v. United States, 55 Cust.Ct. 282, C.D. 2591. Following the granting of a motion for rehearing (Beauti-Vue Products Company v. United States, 56 Cust.Ct. 868, Abstract 69787), additional evidence was presented and the case is again before the court for decision.

The merchandise consists of plastic slat material of various dimensions, held together by string interwined at intervals, used for making blinds, shades, and other articles. It was assessed with duty at 35 per centum ad valorem under paragraph 409 of the Tariff Act of 1930, as modified, infra, by virtue of paragraph 1559(a) of said tariff act, as amended by the Customs Simplification Act of 1954, infra, as similar to material in part of bamboo, suitable for making blinds. It is claimed, alternatively, that the merchandise is properly dutiable, by similitude, under various other paragraphs of said tariff act, as modified, or as a nonenumerated manufactured article under paragraph 1558, as modified. Only one of these claims, that for classification by similitude to metal articles under paragraph 397, as modified, infra is now pressed.

The court held in the original decision that the imported articles resembled in use merchandise made of various materials; that the imported merchandise did not resemble articles of bamboo, osier, willow, or rattan as much as it resembled articles of wood or chip; and that the testimony indicated that there was in existence an article of aluminum which the imported merchandise more closely resembled as to material than wood or chip, but that, since no sample was introduced and it was not established whether the article was in chief value of metal, the evidence was insufficient to establish that the imported merchandise most resembled in material the aluminum article referred to. Therefore, it was held that plaintiff had not sustained its burden of proof.

At the rehearing, plaintiff recalled Victor Grumbeck and introduced a sample (exhibit 8) which the witness said was woven aluminum material suitable for making blinds, etc. It was stipulated that it was in chief value of base metal. Mr. Grumbeck testified that it was used in the same manner as exhibits 1, 2, and 3 (samples representative of the imported articles); that they were identical except that exhibit 8 was made of aluminum and the others of plastic, and that they had the same appearance.

The Government produced no witnesses but it was stipulated:

* * * that at the time of importation of the entries involved herein,

there existed in the commerce of the United States a type of woven material suitable for use and used in making porch or window blinds, curtains, screens, or shades composed in chief value of a product of which a synthetic resin or resin-like substance is the chief binding agent. A sample of such material, representative thereof, except as to over-all dimensions, is submitted as Defendant's Exhibit A.

Plaintiff's exhibit 1 (described in the previous decision), plaintiff's exhibit 8, and defendant's exhibit A, resemble each other closely in appearance and have a greater resemblance to each other than they do to the exhibits of bamboo, chip, or wood. The slats form a shallow "W" in cross section, the aluminum one being slightly flatter than the others, and they are similar in weight, flexibility, and thickness. They are woven together in a similar manner.

No samples were introduced of articles with slats of the size and cross sections of exhibits 2 and 3 (described in the previous decision), but the testimony, stipulation, and exhibits indicate that exhibits 2 and 3 would resemble articles made of the same materials as exhibits 8 and A more than they would articles of wood or chip.

In view of the way this case has developed, the pertinent provisions of the tariff act, are as follows:

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, 68 Stat. 1136:

Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 409, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas.Dec. 234, T.D. 53865, supplemented by President's notification, 90 Treas.Dec. 280, T.D. 53877:

All articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow (except * * *):

Woven or partly assembled material suitable for use in making porch or window blinds, curtains, screens, or shades . . . . . . 35% ad val.

Paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T. D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *) . . . . . . . . 19% ad val.

Paragraph 1539(b), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, supra:

Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent. . . . . 21¢ per lb. and 17% ad val.

■ Since the collector classified the imported merchandise by similitude, it is presumed that he found it was not provided for directly under any paragraph of the tariff act, including direct classification under paragraph 1539(b), supra. B. K. Elliott Company v. United States, 34 Cust.Ct. 121, C.D. 1690; Salentine & Company, Inc. v. United States, 46 Cust.Ct. 357, Abstract 65216; Castelazo & Associates and Surgident, Ltd. v. United States, 47 Cust.Ct. 365, Abstract 66211. Thus, it is presumed that the merchandise is not a manufacture of a product of which a synthetic resin is the chief binding agent.[1] The questions presented are whether it most resembles in material merchandise made of aluminum or merchandise made of a product of which synthetic resin is the chief binding agent, and, if the latter, whether it may be classified by similitude to such an article.

Exhibits 1, 8, and A are all similar in appearance and physical characteristics, but exhibits 1 and A are plastic material, whereas exhibit 8 is metal. Therefore, exhibit 1 most resembles in material exhibit A. Cf. Thomass v. United States, 1 Ct.Cust.Appls. 86, T.D. 31107; Ringk & Co. v. United States, 13 Ct.Cust.Appls. 126, T.D. 40960; Holeproof Hosiery Co. v. United States, 27 Cust.Ct. 176, C.D. 1366; A. L. Erlanger Co., Inc. v. United States, 57 Cust.Ct. 483, C.D. 2845. This is not seriously questioned by plaintiff. It follows that exhibit 1 would be classifiable under paragraph 1539(b), supra, by similitude to exhibit A unless the pertinent provision in paragraph 1539(b) is exclusionary. Whether it is or not is the chief issue here.

■ An exclusion from classification by similitude will not be assumed or implied from an *eo nomine* or descriptive classification, but such classification may not be made where the paragraph clearly indicates by express language or a condition tantamount to the same that it was intended that nothing should be dutiable thereunder by similitude. Strauss & Co. v. United States, 2 Ct.Cust. Appls. 203, T.D. 31946; Nevin v. United States, 5 Ct.Cust.Appls. 423, T.D. 34945; Ungerer & Co. (Inc.) v. United States, 15 Ct.Cust.Appls. 279, T.D. 42469.

In Universal Foreign Service et al. v. United States, 46 Cust.Ct. 258, C.D. 2266, the court held that antenna washers made wholly or in chief value of synthetic resin were classifiable by similitude to manufactures wholly or in chief value of any product of which any synthetic resin is the chief binding agent. The court considered the exclusionary rule and stated:

With respect to the specific exclusion rule, which counsel for the plaintiffs also seems to invoke in the excerpt from his brief, quoted hereinbefore, we do not believe that the language of paragraph 1539(b) is of such a nature that either expressly or by necessary implication it excludes the application of the similitude clause thereto. The words, "any * * * product of which any synthetic resin or resin-like substance is the chief binding agent," so far as we are aware, do not import the erection by Congress of a condition prerequisite to classification under paragraph 1539(b) which would bar the application of the similitude provision, but seem only to be a description of a type of material the manufactures wholly or in chief value of which are made dutiable thereunder. In other words, the language is merely descriptive and not exclusionary. S. S. Kresge Co. et al. v. United States, 46 C.C.P.A. (Customs) 100, C.A.D. 707, and cases therein cited.

In view of the decisions of this court in C.D. 2251 (Air Express Int'l Agency, Inc., et al. v. United States, 46 Cust.Ct. 163) and C.D. 2267, infra, the Bureau did not regard the decision in C.D. 2266,

1. The official papers were not introduced into evidence, but there are laboratory reports attached which state that the plastic portion of the samples was composed of a synthetic resin of the polyvinyl chloride type containing no filler. This does not appear to be disputed.

supra, as an overall ruling that there were no limitations on classification by similitude to articles provided for in paragraph 1539(b), but ruled that pending further judicial expressions on the question, the application of the said decision would not be extended beyond antenna washers made wholly of synthetic resin containing no filler material, 96 Treas.Dec. 413, T.D. 55524(3). Apparently such a judicial expression is now being sought.

Air Express Int'l Agency, Inc., et al. v. United States, 46 Cust.Ct. 163, C.D. 2251, held that plastic artificial teeth were not classifiable by similitude under paragraph 212 as china, porcelain, or vitrified ware "composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture," following Maher-App & Company v. United States, 44 CCPA 22, C.A.D. 630. The same provision was involved in A. W. Ronald Associates v. United States, 46 Cust.Ct. 264, C.D. 2267.

In the *Maher-App* case, the court stated:

> We are of the opinion that the limitation in paragraph 212 to materials which show a particular kind of fracture is not merely descriptive but exclusionary. It seems evident that, if the paragraph did not name any specific materials but provided broadly for wares which "when broken show a vitrified or vitreous or semivitrified or semivitreous fracture," then under the doctrine of the *Cresca* case, it could not include by similitude any wares which did not show such a fracture. * * *

> As we interpret paragraph 212, the reference to the type of fracture is not merely a further description of "China, porcelain, and other vitrified wares" but is a definite limitation on the materials which may be classified under the paragraph, just as the references to sugar content in the *Cresca* case, and to chocolate, nuts, fruit, and

confectionery in the *Neuman & Schwiers Co.* case were.

The *Maher-App* case was distinguished in S. S. Kresge Co., et al. v. United States, 46 CCPA 100, C.A.D. 707, where the court held that the language of paragraph 218(f) of the Tariff Act of 1930 was descriptive and not exclusionary, on the ground that that paragraph covered not only blown and partly blown glass objects, but colored, cut, engraved, and other glass objects which might be blown or not. The court said:

> Here, the restriction "blown" relates to a procedure by which an article is prepared. It does not appear that materials formed by blowing would differ in physical properties from those materials prepared by molding operations, at least in so far as paperweights are concerned. Furthermore, paragraph 218(f) is not limited to "blown" articles, but contains a vast number of types of glass *described* as having been formed by a variety of procedures. We therefore do not believe that the reference to "blown" articles is exclusionary rather than descriptive.

The statutory provision involved in United States v. Steinberg Bros., 47 CCPA 47, C.A.D. 727, defined a synthetic textile as a product "made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose, or a mixture containing any of the foregoing, * * *." The court held that a knit nylon fabric not made from the specified materials was not classifiable directly or by similitude under the provision in question. The court stated: "No application of the similitude provision of the statute can put merchandise into a classification from which it is expressly excluded."

There is a line of cases holding that various articles made of synthetic resin but not manufactures of products of which synthetic resin is the chief binding agent are classifiable under paragraph 1558 as nonenumerated manufactured articles. In some of these cases, the collector had classified the merchandise by similitude to articles of galalith,

and the court held that they were not similar and not being elsewhere provided for were dutiable as nonenumerated manufactured articles. Rolls Razor, Inc. v. United States, 6 Cust.Ct. 271, C.D. 480; American Express Co. v. United States, 6 Cust.Ct. 622, Abstract 45795; Fan Co. et al. v. United States, 14 Cust.Ct. 180, Abstract 49907; Wenchow Importing Co. v. United·States, 25 Cust.Ct. 269, Abstract 54651; Wing On Co. et al. v. United States, 29 Cust.Ct. 414, Abstract 56967. In others, the merchandise had been assessed under paragraph 1539(b) but it was established that synthetic resin did not act as a binding agent. Mimosa American Corp. v. United States, 15 Cust.Ct. 338, Abstract 50728; Tuck High & Co. v. United States, 16 Cust.Ct. 230, Abstract 50912; Quong Hing v. United States, 25 Cust.Ct. 257, Abstract 54617; Wing Woh Chong Hing Kee Co. v. United States, 27 Cust.Ct. 311, Abstract 55861. See also Prepac, Inc. v. United States, 43 Cust.Ct. 97, C.D. 2111, and Alltransport, Incorporated, et al. v. United States, 44 Cust.Ct. 459, Abstract 64154, where it was held that the merchandise was not a manufacture of a product of which any synthetic resin was the chief binding agent and was classifiable by similitude to articles covered by paragraphs other than paragraph 1539(b).

In Quong Hing v. United States, supra, reference was made to several of the cases cited above, and the court said:

> Those cases related to various items of imported merchandise, including mah jong sets, exposure meters, and playing cards, all composed in chief value of synthetic resin, not laminated nor made of laminated products,' and in which the synthetic resin did not act as a binding agent. It was there held that in view of these facts the merchandise was excluded from classification under paragraph 1539(b) of the Tariff Act of 1930, and, as there is no provision for manufactures composed wholly or in chief value of synthetic resin, either directly or by similitude, that it was properly dutiable at the rate of 20 per centum ad

valorem under the provision in paragraph 1558 of the tariff act for nonenumerated manufactured articles.

The statutory language here is not simply manufactures wholly or in chief value of synthetic resin, but manufactures wholly or in chief value of any product of which any synthetic resin is the chief binding agent. Did Congress intend this to be exclusionary?

An examination of the history of the paragraph shows that the Tariff Act of 1922 provided:

> 1441. Electrical insulators and other articles, wholly or partly manufactured, composed wholly or in chief value of shellac, copal, or synthetic phenolic resin, not specially provided for, * * *.

When the Tariff Act of 1930 was being prepared, it was proposed that "synthetic phenolic resin" be deleted and that the remainder become subsection (a) of a new paragraph (subsequently paragraph 1539) and that subsection (b) provide:

> (b) Laminated products (whether or not provided for elsewhere in this Act) of which any synthetic resin or resin-like substance provided for in paragraph 28 is the chief binding agent, in sheets or plates, * * *; in rods, tubes, blocks, or other forms, * * *; manufactures wholly or in chief value of any of the foregoing, * * *. [Tariff Readjustment-1929, Report to Accompany H.R. 2667]

After hearings and amendments, the following language was adopted:

> (b) Laminated products (whether or not provided for elsewhere in this Act) of which any synthetic resin or resin-like substance is the chief binding agent, in sheets or plates, * * *; in rods, tubes, blocks, strips, blanks, or other forms, * * *; manufactures wholly or in chief value of any of the foregoing, or of any other product of which any synthetic resin or resin-like substance is the ͵chief binding agent, * * *.

The Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R.

2667) Subject to Conference states that the words "provided for in paragraph 28" were deleted to include all laminated products of which any synthetic resin or resin-like substance was the chief binding agent instead of restricting the paragraph to products of which the chief binding agent was synthetic phenolic resin, and that a specific provision was added to include nonlaminated products of which any synthetic resin or resin-like substance was the chief binding agent.

It seems apparent that Congress intended to extend the coverage by including other types of synthetic resin than synthetic phenolic resin but at the same time restricted the coverage to laminated products and manufactures of products of which any synthetic resin or resin-like substance was the chief binding agent, rather than including all manufactures wholly or in chief value of synthetic resin.

In this contention, it is significant that the pre-existing material doctrine has been held to apply to paragraph 1539(b) and that a product having synthetic resin as the chief binding agent is not classifiable as a manufacture of a product of which synthetic resin is the chief binding agent. United States v. J. E. Bernard & Co., Inc., 42 CCPA 69, C.A.D. 573; United States (Index Industrial Corp., Party in Interest) v. National Starch Products, Inc., 318 F.2d 737, 50 CCPA 1, C.A.D. 809.

Note also the discussion in Tariff Classification Study, 1960, schedule 7, pages 435–446, which is some indication that paragraph 1539(b) has not been considered as covering by similitude articles not specifically provided for therein.

The provision involved here appears more like those in Maher-App Company v. United States, supra, and United States v. Steinberg Bros., supra, than that in S. S. Kresge Co. et al. v. United States, supra. The *Maher-App* provision restricted the vitrified ware to that having a certain type of fracture when broken and the *Steinberg* case limited the coverage to a synthetic textile made of specified material, whereas the *Kresge* case provision covered many glass objects, not only those blown. Here the merchandise must be a manufacture of a certain product which preexists and that product must not only contain synthetic resin but the synthetic resin must be the chief binding agent.

In view of the legislative history of paragraph 1539(b), supra, and the decisions cited, we are of opinion that the language used imports an intention by Congress that merchandise merely in chief value of synthetic resin should not be classified by similitude to manufactures of a product having any synthetic resin or resin-like substance as the chief binding agent.

The record here establishes that the imported merchandise resembles in use articles made of various materials, resembles most in material an article to which it may not be classified by similitude, and that it next most resembles in material woven aluminum articles. In that situation, it is properly classifiable by similitude to the latter. A. L. Erlanger Co., Inc. v. United States, 51 CCPA 51, C.A.D. 836. We hold, therefore, that the merchandise involved herein is properly classifiable by similitude under paragraph 397 of the Tariff Act of 1930, as modified, supra, at 19 per centum ad valorem as articles wholly or in chief value of aluminum, not specially provided for.

To that extent the protests are sustained. As to all other claims, they are overruled. Judgment will be entered accordingly.