**NEW YORK MERCHANDISE CO., Inc.,**
**Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**C.D. 3803; Protest Nos. 65/3397–777 etc.**

United States Customs Court,
Second Division.

April 24, 1969.

———◆———

Stein & Shostak (S. Richard Shostak, Los Angeles, Cal., Allan Kamnitz, New York City, and Leonard M. Fertman, Los Angeles, Cal., of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Glenn E. Harris, Arthur Steinberg, and Andrew P. Vance, New York City, trial attorneys), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The merchandise involved in these cases, consolidated at the trial, consists of vinyl mittens imported from Japan and entered at the port of San Diego. It was assessed with duty at 25 per centum ad valorem under paragraph 915 of the Tariff Act of 1930, by virtue of the similitude provision in paragraph 1559(a), as amended by the Customs Simplification Act of 1954, as mittens wholly or in chief value of cotton made of woven fabric. It is claimed that the merchandise is properly dutiable at 15 per centum ad valorem under paragraph 1532(b) of said tariff act, as modified by the General Agreement on Tariffs and Trade, 82 Treas.Dec. 305, T.D. 51802, by virtue of said similitude provision, as gloves wholly or in chief value of leather made from cowhides (except calfskins) or horsehides, partly or wholly manufactured.

The pertinent provisions of the tariff act are as follows:

Tariff Act of 1930:

PAR. 915. Gloves and mittens, finished or unfinished, wholly or in chief value of cotton or other vegetable fiber: Made of fabric knit on a warp-knitting machine, * * *; made of fabric knit on other than a warp-knitting machine, * * *; made of woven fabric, 25 per centum ad valorem.

Tariff Act of 1930, as modified by T.D. 51802:

1532(b) Gloves wholly or in chief value of leather made from horsehides or cowhides (except calfskins), whether wholly or partly manufactured * * *. 15% ad val.

Tariff Act of 1930, as amended by the Customs Simplification Act of 1954:

PAR. 1559. (a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

A sample of the merchandise was received in evidence at the trial as plaintiff's exhibit 1 and one witness was called—Mr. Lewis Jackson, an importer of gloves and footwear, associated with the firms of Angel-Etts and Stonewall Trading Co. He testified that the sample was a ski mitten with a zipper back commonly used in the sport of skiing. It has a large cuff which the witness said enabled the mitt to go directly over the sleeve of the outerwear as a protection against the wet of the snow to keep the hands and clothes dry. The pieces of the mitten have been joined by stitching and it has a lining composed of a thin fabric.

Mr. Jackson testified that he has been importing gloves for 3 years and has brought in vinyl gloves, ski gloves, ski mittens, knit gloves and mittens, and wool gloves. During that time he had imported approximately $100,000 worth of gloves, of which $30,000 were ski gloves. He had seriously investigated the ski glove market for the purpose of getting into the trade for 3 years before he actually started to import. He had seen gloves manufactured in the United States and in the Orient for a number of years and was shown many kinds of gloves while making inquiries abroad. He had checked with suppliers in Manila, Japan, and Hong Kong and had contacted distributors in this country to determine the saleability of this type of mitten in the United States. He had become familiar with the use of various gloves by having seen gloves manufactured, having imported substantial quantities, and having sold and distributed them throughout the United States.

He had seen gloves similar to exhibit 1 made of cowhide, which in his opinion would most commonly be used in a skiing mitt, because the flexibility and waterproof quality of the leather would make it desirable. He said cotton would not be suitable for use in a skiing mitten because it would not be waterproof. In his view the vinyl mitten here would be most similar in use to cowhide or horsehide mittens because of its softness, flexibility, and waterproofing. He admitted that cowhide is treated to become waterproof.

To his knowledge, no ski glove was made in this country or abroad and used in the United States in 1962 which was in chief value of cotton. He could not imagine anyone making a ski mitt of cotton knowing it was not waterproof. He had never seen ski gloves made of cotton with a rubberizing treatment but said that such a glove would be waterproof.

He had seen ski mitts made of pigskin but not of deerskin, calfskin, or kid. He said that while treated deerskin would be waterproof, not all leathers were susceptible to treatment for waterproofing.

He stated that leather ski gloves have extra sections at the points of wear, but that there is no such reenforcement in the palm of exhibit 1 because it is a cheaper product.

He admitted that a great many leather ski mittens are lined with fur or nylon for warmth but said he had seen them with and without linings. He stated that exhibit 1 was to be used as a waterproof item rather than for warmth, as a lined leather glove would be.

A customs laboratory report which is in evidence among the official papers states that the red plastic part of the sample is composed of polyvinyl chloride type synthetic resin and that the synthetic resin is not acting as chief binding agent.

An examination of the mitten involved herein shows that it is made of a sheeting material which has not been woven. While there is no testimony in regard to the lining, it does not appear to have been woven but may have been manufactured by a knitting process.

■ Since the collector classified the merchandise by similitude, it is presumed that he found it was not provided for directly under any paragraph of the tariff act. Beauti-Vue Products Company v. United States, 58 Cust.Ct. 360, C.D. 2987, and cases cited. The burden rests upon plaintiff to establish that the collector's classification is wrong and that its claimed classification is correct. Morris Friedman v. United States, 50 CCPA 53, C.A.D. 819.

■ Plaintiff contends that the collector's classification by similitude to cotton gloves and mittens of woven fabric under paragraph 915 was erroneous on the ground that the merchandise here was not made of a woven fabric and was thus precluded from classification by similitude to a woven fabric by reason of the exclusionary rule. Under that principle the similitude provision cannot be applied so as to put merchandise into a classification from which it has been expressly excluded. Ungerer & Co. (Inc.) v. United States, 15 Ct.Cust.Appls. 279, T.D. 42469; Maher-App & Company

v. United States, 44 CCPA 22, C.A.D. 630; United States v. Steinberg Bros., 47 CCPA 47, C.A.D. 727; Alex W. Block Company v. United States, 61 Cust.Ct. ——, C.D. 3644, and cases cited.

As stated in the *Block Company*, case:

* * * language in an enumerating provision which contains a restrictive definition of the merchandise, or a specific limitation as to some property of the merchandise, has generally been held to evidence a legislative intent to exclude from classification by similitude to the enumerated merchandise articles not encompassed within the restrictive definition or possessing the specified property limitation. * *

It has been held, for example, that a provision for synthetic textiles made from "cellulose, cellulose hydrate or a compound of cellulose or a mixture containing any of the foregoing" excluded classification by similitude of synthetic fabrics made of other material (United States v. Steinberg Bros., *supra*), and that rugs having no warp were not classifiable by similitude to rugs having a warp of cotton, hemp, or other vegetable substances. (Akawa, Morimura & Co. v. United States, 11 Ct.Cust.Appls. 418, T.D. 39432).

Defendant claims that there is no language in paragraph 915 which would expressly exclude the merchandise in issue. An examination of the paragraph shows, however, that it provided for three types of cotton gloves and mittens; (1) those made of fabric knit on a warp-knitting machine (2) those made of fabric knit on other than a warp-knitting machine and (3) those made of woven fabric. There is no basket provision for "other" cotton gloves and mittens.

■ An examination of other paragraphs in the Tariff Act of 1930 covering gloves discloses provisions for: gloves wholly or in chief value of leather made from horsehides or cowhides, except calfskins (paragraph 1532(b)); gloves and mittens wholly or in chief value of wool (paragraph 1114(b)); gloves and mittens, knit or crocheted, wholly or in chief value of silk (paragraph 1208); gloves and mittens, knit or crocheted, wholly or in chief value of rayon or other synthetic textile (paragraph 1309). We conclude that when Congress intended to provide for all types of gloves or mittens made of a particular material it stated without any restriction that such gloves or mittens be wholly or in chief value of such material, but that when it intended a more restrictive application, it provided that they be knit or crocheted or of woven fabric. It follows that the provision in paragraph 915 was intended to cover only cotton gloves and mittens which were made of knitted or woven fabric.

Thus, unless the exclusionary rule is inapplicable, the instant vinyl mittens, which are not woven, are not classifiable by similitude to cotton gloves or mittens of woven fabric. Judson-Sheldon and Pacific Wood Products Co. v. United States, 53 Cust.Ct. 255, Abstract 68744. In that case it was held that vinyl seat covers were excluded from classification under paragraph 1312 of the Tariff Act of 1930 by similitude to manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile and textile products, made of bands or strips of rayon or other synthetic textile. The court stated:

* * * An examination of the imported samples and the record indicates they are made of vinyl plastic, which obviously is not manufactured from a fiber, filament, or fibrous structure, nor is it made from a band or strip not over 1 inch in width. Accordingly, by the definition contained in * * * paragraph 1312, as modified, *supra*, the imported merchandise could not properly be subject to classification as classified. J.M. P.R. Trading Corp., Alltransport, Inc. v. United States, 43 CCPA 1, C.A.D. 600, affirming 33 Cust.Ct. 226, C.D. 1658; United States v. Steinberg Bros., Steinberg Bros. v. United States, 47 CCPA 47, C.A.D. 727, affirming Steinberg Bros. v. United States, 41 Cust.Ct. 128, C.D. 2030.

Defendant claims, however, that under the amendment to paragraph 1559, the exclusionary rule is no longer applicable.

Paragraph 1559 as originally enacted provided that an article not enumerated in the tariff act should be subject to duty at the rate applicable to an enumerated article to which it was similar either in material, quality, texture, or use. As amended by the Customs Simplification Act of 1954, classification by similitude is limited to similitude in use except that where an article equally resembles two or more enumerated articles in use it is subject to the rate of duty applicable to the one which it most resembles in material.

Claims that by reason of the amendment the exclusionary rule no longer bars classification by similitude of use have been discussed in a number of cases. J. E. Bernard & Co., Inc. v. United States, 55 Cust.Ct. 17, C.D. 2549, affirmed 53 CCPA 116, C.A.D. 886; National Silver Co. v. United States, 56 Cust.Ct. 401, C.D. 2666, appeal dismissed 53 CCPA 155; S. S. Kresge Co., et al. v. United States, 46 CCPA 100, C.A.D. 707. In the case last cited, the court held that the particular language involved was descriptive and not exclusionary, but indicated that if it had been exclusionary, classification by similitude would have been barred.

In New York Merchandise Co., Inc. v. United States, 54 Cust.Ct. 199, C.D. 2533, it was held that the exclusionary rule was still applicable. The court said, (p. 203):

To accept the argument of the defendant would amount to an amendment of paragraph 1529(a) of the Tariff Act of 1930, by implication, which is not an accepted principle of law. If the intent of Congress in amending paragraph 1559, *supra*, was such as to eliminate any exclusionary provisions which relate to material, quality, or texture, it would have been unnecessary to amend paragraph 1313 of the Tariff Act of 1930, since the exclusionary provisions contained therein did not relate to use but only

to material. It is a basic principle of law which needs no citation that it is presumed Congress would not do a useless act. However, paragraph 1313 was in fact amended, 93 Treas.Dec. 388, T.D. 54676. By the same token, if Congress had intended to eliminate the exclusionary language contained in paragraph 1529(a) of said act, it could have done so by the legislative process.

The basic fallacy in the argument of defendant that the amendment of paragraph 1559 of the Tariff Act of 1930, *supra*, making "use" the primary determinative of similitude, eliminates the exclusions addressed to considerations of material, texture, or quality, is answered by the conclusion that the amendment in question does not in any sense relate to, modify, or change any other paragraph which may have exclusionary provisions.

■ Although not involving the amendment, the reasoning in the *Maher-App* case, *supra*, is still pertinent. In that case the court held that plastic artificial teeth could not be classifiable by similitude to porcelain articles "composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture." It stated (p. 26–27):

As above noted, it is conceded in appellee's brief that porcelain not showing the specified fracture is excluded from classification under paragraph 212 by similitude, and to that extent at least, the reference to the fracture must be regarded as an exclusionary limitation. In the absence of evidence as to why the reference to fracture was included in the paragraph, there seems to be no sufficient reason for holding that its effect is to be limited to the materials provided for *eo nomine*. It does not appear logical to hold that porcelain itself, which is provided for *eo nomine* in the paragraph, cannot be included unless it shows the specified type of fracture, whereas the instant merchandise, a

plastic composition, which not only is not provided for *eo nomine,* but which no one contends exhibits the required fracture, may be included.

Appellee argues that since the similitude relied on here is that of use, the fracture limitation, which relates to material, quality, or texture, must be disregarded. In our opinion, however, as was stated in the *Cresca* [Cresca Co. (Inc.) et al. v. United States, 17 C.C.P.A. 83] case, no application of the similitude statute can bring under a paragraph merchandise which is excluded by the express language of that paragraph. The cakes involved in the *Neuman & Schwiers Co.* case which did not include chocolate, nuts, fruit, or confectionery, were no doubt similar in use to cakes containing one or more of those ingredients, but it was nevertheless held that they could not be included by similitude under a paragraph calling for such ingredients. Similarly, porcelain teeth which did not show the specified fracture would be similar in use to those that did, but appellee agrees that the former could not be included under paragraph 212 by similitude.

Thus, in the instant case, it would not be logical to hold that cotton gloves or mittens not made of woven fabric were not dutiable under the third clause of paragraph 915, but that plastic gloves or mittens not woven were so dutiable by similitude.

We find, therefore, that the instant merchandise may not be classified by similitude as cotton gloves or mittens made of woven fabrics.

Plaintiff has thus sustained the first part of its burden, that of establishing that the collector's classification is erroneous. In order to sustain the second, it must show that these vinyl mittens most resemble in use some other article covered by a paragraph having no exclusionary language. Plaintiff claims that such articles are cowhide gloves, classifiable under the provision in paragraph 1532(b), *supra,* for gloves wholly or in chief value of leather made from cowhides (except calfskins). On this point, Mr. Jackson testified that he had informed himself as to the use of these mittens before he had commenced importing them. He had seen ski mittens similar to exhibit 1 made of cowhide and stated that they were similar to the present merchandise in use, appearance, softness, flexibility of the leather, and waterproof quality. He testified that the instant merchandise was used principally because of its waterproof quality and that treated cowhide mittens had the same quality. While he had admitted that some leather ski mittens were also lined for warmth, he had seen others which were not and said that the cheaper products were not so lined.

From this evidence it appears that the imported merchandise is similar to cowhide ski mittens in use. The two articles were used in the same way and for substantially the same purpose, keeping dry. While the witness knew of pigskin ski mittens he had apparently seen them only once. It was his opinion that these vinyl mittens most resembled cowhide mittens. There is no evidence that ski mittens were made of deerskin, calfskin, or kidskin, or that if there were any, they were used for the same purposes as these vinyl mittens were.

Plaintiff is not required to prove a negative, that is, to negate the possibility that other ski mittens may exist. Technical Tape Corp. v. United States, 55 CCPA 38, C.A.D. 931. The record here presented is sufficient to establish *prima facie* that the imported merchandise most resembles in use ski mittens made of cowhide. We hold, therefore, that such merchandise is properly dutiable at 15 per centum ad valorem under paragraph 1532(b), as modified, by virtue of the similitude clause in paragraph 1559(a), as amended, as gloves wholly or in chief value of leather made from cowhides (except calfskins).

The protests are sustained and judgment will be entered for the plaintiff.

FORD, J., concurs.