(C.D. 2591)

BEAUTI-VUE PRODUCTS COMPANY v. UNITED STATES

United States Customs Court, First Division

(Decided November 29, 1965)

*Wallace & Schwartz* (*Earl R. Lidstrom, Joseph Schwartz,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Charles P. Deem* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of plastic slats held together by string intertwined at intervals, imported from Japan and entered at the port of Chicago on various dates between February 5, 1960, and April 24, 1962. The invoices described the merchandise as woven plastic (Poly Vinyl Chloride Semi Manufactured) and indicate that it was in rolls 50 and 100 feet long and 2.5 to 12 feet wide. It was assessed with duty at 35 per centum ad valorem under paragraph 409 of the Tariff Act of 1930, as modified, by virtue of paragraph 1559, as amended, *infra,* as similar to material in part of bamboo, suitable for making blinds. It is claimed, alternatively, that the merchandise is properly dutiable, by similitude, under various other paragraphs of said tariff act, as modified, *infra,* or as a nonenumerated manufactured article under paragraph 1558, as modified, *infra.*

The pertinent provisions of the tariff act, as modified or amended, are as follows:

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, 68 Stat. 1136:

Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more

articles which it most resembles in respect of the materials of which it is composed.

Paragraph 409, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877:

All articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow (except * * *):

 Woven or partly assembled material suitable for use in making porch or window blinds, curtains, screens, or shades_____ 35% ad val.

Paragraph 397, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, TD. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

 *  *  *  *  *  *  *

 Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

 *  *  *  *  *  *  *

 Not wholly or in chief value of tin or tin plate:

 *  *  *  *  *  *  *

 Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *)_____ 19% ad val.

Paragraph 412, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52476:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

 *  *  *  *  *  *  *

 Other (except * * *)_____ 16⅔% ad val.

Paragraph 1537(a), as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, *supra*:

Manufactures of bone, chip, grass, sea grass, horn, straw, or weeds, or of which these substances or any of them or a combination of these substances or any of them with quills, palm leaf, or whalebone, is the component material of chief value, not specially provided for:

 Manufactures of chip or of which chip is the component material of chief value_____ 25% ad val.

Paragraph 1558, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52827:

Articles manufactured, in whole or in part, not specially provided for (except * * *)_____ 10% ad val.

At the trial, Victor Grumbeck, a partner of the plaintiff company, testified that he had ordered the material involved herein from Pakowa Trading Co. in Japan and had received it as ordered. Three samples representative of the merchandise, except as to size, were received in evidence as plaintiff's exhibits 1, 2, and 3, respectively. The witness said the first was called by his firm "No. 1 woven plastic material" and is imported in various widths and lengths, in sizes up to 8 to 10 feet wide and in rolls of 100 feet. The sample consists of slats measuring 7¾ inches long and three-eighths of an inch wide. They are not flat, but are a shallow "W" in cross-section, so that there is one groove on one side and two grooves on the other. The slats are woven together with strands of thread about 1 inch apart, in such a way that the slats almost meet, being separated only by the thickness of the thread. The witness stated that the overall thickness of the slat is one-eighth of an inch. The material *per se* is much thinner.

According to the witness, plaintiff's exhibit 2 represents his firm's No. 3 woven plastic material. It consists of slats in four different colors, measuring 11 inches long and ½ an inch wide. They are not flat, but wavy, a shallow "S" in cross-section, having one groove on each side. The edges are beveled and the slats overlap. They are woven together by cords about 3 inches apart. The witness stated that the weave is similar to that used on bevel-light basswood materials and is about "three inches on center." He said that the overall thickness of the material was one-tenth of an inch. The material comes in the basic four colors of the sample, but each roll is of a separate color.

Plaintiff's exhibit 3 is called No. 4 woven plastic material. It consists of slats, 10 inches long and 1 inch wide. They also are not flat, but have flat grooves on each side, a shallow "S" in cross-section. The edges are beveled and the slats overlap. They are woven together with heavy-duty cotton weaving cord in an alternating fashion to simulate basswood weave. The cords are about 4 inches apart. The overall thickness of the material is one-tenth of an inch.

Mr. Grumbeck testified that, after importation, this material is manufactured into rollup shades, string roller shades, draperies, or folding doors. Several different styles of window and porch shades are made, such as spring roller, pulley, or accordion-fold shades. A pulley shade is operated with cords and rolls up in a bundle from the bottom up. Spring roller shades are mounted on a spring roller at the top and operate like a window shade. An accordion shade folds up like an accordion. All of the three types of plastic material involved here are used in making these items.

The witness' firm uses other materials to make the same type of merchandise, such at matchstick bamboo, woven basswoods, and woven aluminum. Shades are also made of plastic-coated fabrics, fiberglass, and sateen cotton.

There were received in evidence representative samples (except as to size) of merchandise made of other materials. Plaintiff's exhibit 4 is made of matchstick bamboo. It consists of rounded sticks over 10 inches long and one-eighth of an inch in diameter. They are woven together by cords over 2 inches apart in such a way that the sticks are separated and the material can be easily seen through. The witness stated that his firm also uses another type of bamboo called "toothpick" which is smaller in diameter.

Plaintiff's exhibit 5 is called bevel-light basswood and is used in making shades and folding doors. Curtains can be made of it on special request, but it is not a particularly good material for that. The sample consists of wooden slats, about 10 inches long and one-half an inch wide. They are slanted on the top and bottom, so that they overlap when woven. They are woven with cords $3\frac{1}{4}$ inches apart. According to the witness, this is the same type of weave that is used on exhibit 2, and the material is one-tenth of an inch thick.

Plaintiff's exhibit 6 was described by the witness as basswood material called alterweave. It consists of wooden slats, about 12 inches long, some 1 inch wide and some three-eighths of an inch wide. They are flat on the top and bottom and are woven together generally in a pattern of two 1-inch wide pieces followed by two three-eighths-of-an-inch wide pieces. The cords are about 4 inches apart. According to the witness, the thickness of the wood is one-tenth of an inch, and the weave is like that of exhibit 3. It is used for the same purposes as exhibits 4 and 5.

Plaintiff's exhibit 7 consists of quarter-inch basswood material, imported under the number 7007, quarter-inch wide veneer. It is "classified" as chip, a material that would be flexible enough for weaving into baskets or other articles. Whether the witness meant classified for tariff purposes is not entirely clear. It is called a veneer because it is a veneer cut, and not a saw-cut material. The sample consists of slats, 7 inches long and one-quarter inch wide. They have slightly rounded edges and are closely woven together with threads about 1 inch apart. According to the witness, the material is one-sixteenth of an inch thick and is woven similarly to the weave of exhibit 1.

Mr. Grumbeck testified that the aluminum material which is used to manufacture shades is similar in appearance to the No. 1 plastic material, i.e., exhibit 1, in that the shape of the slats is identical, in a sort of V shape. However, no sample was offered.

Since the collector classified the imported merchandise by similitude, it is presumed that he found it was not provided for directly under any paragraph of the tariff act. *B. K. Elliott Company* v. *United States*, 34 Cust. Ct. 121, C.D. 1690; *Salentine & Company, Inc.* v. *United States*, 46 Cust. Ct. 357, Abstract 65216; *Castelazo & Associates and Surgident, Ltd.* v. *United States*, 47 Cust. Ct. 365, Abstract 66211; *Weather-Rite Sportswear Co., Inc.* v. *United States*, 51 Cust. Ct. 221, Abstract 68019, affirmed *sub nom, United States* v. *Weather-Rite Sportswear Co., Inc.*, 52 CCPA —, C.A.D. 848. Under paragraph 1559(a), as amended, *supra,* where an article is not enumerated, it is subject to duty at the same rate as the enumerated article which it most resembles in use, and where it equally resembles in use two or more enumerated articles, it is dutiable at the rate applicable to the one which it most resembles in respect of the materials of which it is composed. *S. S. Kresge Co. et al.* v. *United States*, 46 CCPA 100, C.A.D. 707.

Plaintiff claims that the imported material equally resembles in use articles of bamboo, wood, aluminum, chip, and other materials, but that it most resembles in material aluminum, or, if aluminum is rejected, wood. The claim as to chip is not emphasized in plaintiff's brief, but has not been abandoned.

Defendant's position here is that the collector's classification establishes that the merchandise more closely resembles a bamboo manufactured article in respect to "use and material" than any other enumerated item; that the record does not establish that at the time of the entries at bar, wooden and metal materials were used in the United States for the same purposes as the imported products; and that the evidence does not rebut the presumption that there was in existence at the time of importation a bamboo prototype which more closely resembled the imported merchandise in material than articles of metal or wood.

The reports by Deputy Collector McCarthy in three of the four protests state that the classification was by similitude of material to articles of bamboo, osier, willow, or rattan. This imports findings that (a) there was no material the merchandise most resembled as to use, only several that it equally resembled in that particular, and that (b) with respect to material, the merchandise resembled bamboo, etc., more than anything else. Finding (a) is not seriously challenged and may be considered established. In the report in the fourth protest, collector's No. 13475, the basis is alleged as follows: "Woven material suitable for making window blinds, etc." which is meaningless because not in tariff language. However, in the absence of any comment on this by the parties, we must assume that Mr. McCarthy's words were somehow garbled and that he intended to make a report

conforming to the ones he made on the other three protests. The issue here is as to classification by similitude of material.

Although Mr. Grumbeck did not state how long he had been in the business of manufacturing blinds, shades, and similar articles, he testified that he had personally ordered the material involved herein, so that he must have been associated with the plaintiff before the importation thereof and must have known of the uses for which it was purchased. He testified that other materials were used for the same purposes, and it may be inferred that they were so used during the same period. Counsel for the Government did not cross-examine the witness nor object to his testimony as being irrelevant. This constituted, presumptively, an admission that the uses did not significantly differ between the time of importation and the date of trial. *United States* v. *Joseph G. Brenner Co.*, 19 CCPA 105, T.D. 45243.

The issue before us is thus which enumerated article do the imported plastic products most resemble with respect to the material of which they are composed. For the purpose of determining similitude under the statute, there must be known to commerce, and not merely to imagination, articles such as those to which similitude is to be found. *B. Shackman & Company et al.* v. *United States*, 38 Cust. Ct. 30, C.D. 1839. The comparison must be on the basis of their physical characteristics and not on the basis of their frequency of use in such articles. *Alltransport, Incorporated, et al.* v. *United States*, 44 Cust. Ct. 459, Abstract 64154; *Ignaz Strauss & Co., Inc., et al.* v. *United States*, 45 Cust. Ct. 161, C.D. 2218; *Border Brokerage Co.* v. *United States*, 51 Cust. Ct. 247, Abstract 68090.

We find that the imported merchandise does not resemble articles of bamboo, osier, willow, or rattan as much as it resembles articles of wood or chip. The collector's classification is, therefore, not by similitude to the articles the imports most resemble as to material, and is not in accordance with the statute. Our finding is based on the testimony and comparison of the samples of the imported merchandise (exhibits 1–3) with the samples of bamboo (exhibit 4), of wood (exhibits 5 and 6), and of chip (exhibit 7).

However, in view of the record and the statements in plaintiff's brief, we cannot find that the imported merchandise *most* resembles articles of wood or chip with respect to material. Therefore, plaintiff's claims under paragraphs 412 and 1537(a), *supra*, cannot be sustained. The testimony and counsel's statements indicate that there is in existence an article of aluminum which the imported merchandise more closely resembles as to material than articles of wood or chip. The aluminum slat can be and is shaped into the shallow "S" and "W" cross-sections as the plastic slats are, permitting the quality of rigidity to be obtained in a light slat, which in wood or woody slats requires significantly heavier construction. Therefore, articles other-

wise similar to those imported, but made with wood or woody slats, do not *most* resemble the imported articles with respect to materials.

But we are unable to find on the evidence before us that any article dutiable under paragraph 397, *supra*, does most resemble the imported article. We know that there is an import made with aluminum. The statements of plaintiff's counsel about it, outside the testimony, though significant as admissions respecting plaintiff's other claims, are not affirmative evidence to support the claim now considered. We have no sample before us. Without conceding that the claim is otherwise fully proven, we point out that for the claimed prototype article to be dutiable under paragraph 397, it has to be wholly or in chief value of aluminum, not just partly of that metal. It cannot be wholly aluminum if it is similar to the imported articles, which are partly of plastic and partly of other materials. If we had a sample before us, we might be able to say it was too obvious for other proof to be needed as to what its component of chief value was. (*Cf. John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536.) We have no such sample here, nor any testimony. Plaintiff expects us to accept bald assumption as a substitute for proof with respect to a vital element of plaintiff's case. Nor can judicial knowledge supply the want of proof; our judicial knowledge respecting the use of aluminum here involved is a complete void.

Since the evidence shows that the collector did not use for classification a prototype material most resembling the imported articles with respect to the material of which they are composed, and since plaintiff has failed to establish what article does most resemble the imported article in that particular, or how such article would be classified, we are constrained to overrule the protests, without approving the collector's classification.