**J. M. RODGERS CO., Inc.**
v.
**UNITED STATES.**
C.D. 3084;
Protest No. 61/20809(B)–2640–61.

United States Customs Court,
First Division.
Aug. 16, 1967.

Stitt & Hemmendinger, Washington, D. C. (Noel Hemmendinger, Washington, D. C., of counsel, John D. Rode, Assoc. Counsel, New York City), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for defendant.

Before WATSON and LANDIS, Judges.

LANDIS, Judge.

Plaintiff, having pursued and been denied administrative relief, in effect protests the administrative finding that black vinyl raincoats, imported from Japan, are manufactures of a product consisting of calcium carbonate filler bound together with synthetic resin or a resin-like substance. The Bureau ruling confirmed the collector's liquidation, classifying the raincoats under paragraph 1539 (b) of the Tariff Act of 1930, as modi-

fied by the Sixth Protocol to the General Agreement on Tariffs and Trade (T.D. 54108), as manufactures wholly or in chief value of a product of which any synthetic resin or resin-like substance is the chief binding agent, dutiable at 17 per centum ad valorem and 21 cents per pound.

Plaintiff contends that vinyl raincoats are nowhere directly provided for in the Tariff Act of 1930 (unless under the catchall provision of paragraph 1558) and that vinyl raincoats are similar in use to raincoats made of india rubber. India rubber raincoats are classified under the general enumeration for manufactures of india rubber in paragraph 1537(b) of the Tariff Act of 1930. With these premises in mind, plaintiff claims that, following paragraph 1559, as amended (the so-called similitude provision), these vinyl raincoats should be classified and assessed at the same duty rate as india rubber raincoats, under paragraph 1537 (b), as manufactures of india rubber or gutta percha, or of which those substances or either of them is the component material of chief value and not specially provided. The duty rate on manufactures of india rubber under paragraph 1537(b), as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade (T.D. 53865) is 12½ per centum ad valorem. While plaintiff has not pursued or argued its alternative claim under paragraph 1558, the catchall provision classifying all articles which cannot be otherwise directly classified under the tariff act, we consider it a viable alternative to the classifications primarily urged, in the context of this litigation.

■ At the trial, this became, as it were, a plaintiff's case. Defendant introduced no evidence. Plaintiff took on the dual burden, which is of the very fabric of the customs evidentiary law, proving that these vinyl raincoats were improperly classified under paragraph 1539(b) and, with these proofs settled, going on to establish the requisite paragraph 1559 similitude in support of the claim under paragraph 1537(b). United States v. Cody Manufacturing Co., Inc., et al., 44 CCPA 67, C.A.D. 639. To this end, plaintiff introduced a number of exhibits and adduced testimony.

At least two-thirds of the record is devoted to the factual question, are these vinyl raincoats the product of a calcium carbonate filler bound with synthetic resin? The give and take which comes through the briefs of counsel has, however, effectively muted that issue, and an extensive discussion of the point is no longer necessary. Suffice it to say, by way of background, that a customs laboratory analysis (exhibit 2) shaped this dispute when it reported that:

The plastic raincoat is composed of a synthetic resin (polyvinyl chloride type) containing no organic filler and 2.7% ash (chiefly calcium carbonate filler [*]).

In our opinion, the resin is serving as chief binding agent.

Weight of raincoat . . . 1 lb., 7.3 oz. av.

[* Additional note.] Always added as filler.

Plaintiff agrees that the reported analysis is factually accurate, but challenges the conclusion that "the resin is serving as chief binding agent" for the calcium carbonate. Mr. Ezekiel J. Jacob, qualified and accepted by defendant as an expert witness in the art of calendering, manufacturing and using synthetic resins, testified for plaintiff. He testified that:

Calendering is like a woman rolling dough. There are 3, 4, or 5 rollers made of steel, each one weighing as much as four automobiles, heated with steam to about 350-degrees, and through these rollers are passed and rolled a hot plastic mass of thermoplastic resin, and it's rolled down to a thickness less than the sheet of paper on your desk, your Honor, or it could be rolled to heavier thicknesses like the tile, the vinyl tile that you might have in your bathroom. It is rolled on fabric, but it is a hot-rolling process, where hot steel rolls take a

sticky pasty mass and roll it at a high rate of speed—about 100 to 150 yards a minute—without any breakdown, without any pin-holes, without any dirtying of the roll that rolled that hot dough. It is truly a most difficult art * * * [R. 16–17.]

Mr. Jacob explained that there are basically two types of resins, those which can exist on their own and those which cannot. Resin of the latter category is made useful by introducing it into a material (filler) that it can bind to produce, under heat and pressure, a new commercially important molded product. The character of the product is shaped by the resin and filler in combination, since neither could exist separately. (R. 31.) This combination, said Mr. Jacob, is what he envisions in a "product of which any synthetic resin or resin-like substance is the chief binding agent." (R. 22.)

    * * * It clearly excludes in my mind any plastic material, any synthetic material, any synthetic resin that can exist on its own without any adventitious material there by design or by accident, with complete integrity as a self-sustaining film formula. * * [R. 23.]

The polyvinyl chloride in these raincoats, he said, is of the latter class.

The calcium carbonate reported in the customs laboratory report (exhibit 1), said Mr. Jacob, is not a filler because it serves a chemical function. He enumerated the chemical functions as follows:

    The functional additive such as calcium carbonate is used as a stabilizer in the formulating of a polyvinyl resin compound. It is a most essential part of any polyvinyl resin compound. It will first accept the acid and neutralize it, while the plastic in a hot steaming form is generating this acid, and trying to break down. Secondly, it will clean and neutralize the tiny little indentations in the steel roll which have picked up and have started to burn the resin. It will neutralize that, clean it off, and let it go through the

machine at a high rate of speed. And, finally, there is a residual, like a long term acid neutralizer. As the raincoat, or the plastic material, the upholstery is in service, it will slowly also give off an acid which will make it brittle, and this acid is slowly picked up by the calcium carbonate. Those are the only three functions. [R. 43, 44.]

Limiting this testimony to the composition of the raincoats here, defendant "concedes that the classification of the imported merchandise, i. e. black black vinyl raincoats made from polyvinyl chloride sheeting which shows an approximate ash content of 2.7 percent by weight, eliciting the presence of calcium carbonate in approximately the same amount, under paragraph 1539(b), as modified, supra, is erroneous. This concession is made in view of the testimony to the effect that calcium carbonate, when introduced into a polyvinyl chloride compound in quantities as small as is in the merchandise at bar, does not serve the function of a filler, but as a stabilizer of merchandise." (Defendant's brief, page 11.)

The facts, briefly summarized above, support this concession, accord, United States v. National Starch Products, Inc., 318 F.2d 737, 50 CCPA 1, C.A.D. 809; and Tausend et al. v. United States, 15 Ct.Cust.Appls. 323, T.D. 42490. We hold, therefore, that these vinyl raincoats are not chargeable with duty as manufactures of any product of which any synthetic resin or resin-like substance is the chief binding agent under paragraph 1539(b), as liquidated by the collector.

This turn in the case notwithstanding, defendant directly attacks plaintiff's right to a judgment on its affirmative claim by similitude (paragraph 1559) under paragraph 1537(b). Defendant's argument is a little unclear at this point because at five places in its brief counsel suggests the possibility of classification under paragraph 216, i. e., that the raincoats were articles in part of carbon. (Defendant's brief, pages 12, 13.)

We take it the argument is fashioned from customs examiner Gaines' testimony, where, testifying for plaintiff on classification of raincoats, he stated that in black colored raincoats, "there was a consideration of maybe carbon was in there, which might put it [the raincoat] into another category." (R. 99.) This is not proof and to draw on it, we consider specious.

■■■ The best evidence, in this record, of the composition of the raincoats is the customs laboratory report, exhibit 2, supra. It is silent on the possibility of carbon content. Mr. Jacob did testify, quite generally, that carbon black is used in vinyl preparations for coloring. And, while he did have an opinion on the amount of carbon in raincoat exhibit 1—somewhat less than 2 percent—it, exhibit 1, was received in evidence not as the imported raincoat, but as merely illustrative of what the material in the raincoat looked like and its use. We fail to see how this evidence has any probative effect whatever and we cannot hold for the defendant upon a new attempted classification on the basis of surmise and conjecture. Bing & Co.'s Successors v. United States, 3 Ct.Cust.Appls. 211, 213, T.D. 32532. Where defendant asserts a claim in defense, different from the liquidation classification, the burden is on defendant to prove it. The presumption of correctness which clothes the collector's classification does not extend to a new claim urged by defendant. S. S. Kresge Co. v. United States, 25 Cust.Ct. 89, C.D. 1269; General Aniline Works, Inc. v. United States, 4 Cust.Ct. 458, Abstract 43600; Scharf Bros. Co., Inc. v. United States, 2 Cust.Ct. 231, C.D. 130. It is no part of plaintiff's case to meet every possible unsupported classification defendant can think of. As our court of appeals said:

The Government contends, and correctly, that the burden of proof was on the importers all the way through the case to show that the collector was wrong and that he was right. As a corollary to that proposition it follows that unless the importers produced some evidence substantiating prima facie the correctness of his claim, no duty was imposed on the Government to sustain the correctness of the collector's classification or to make proof that the importers were wrong.

The burden of proof—that is to say, the obligation imposed by law on a litigant of establishing a fact by evidence—never shifts; but the duty of meeting or overcoming evidence in favor of or against any given contention may shift from one side to the other during the progress of the trial, according as the nature and weight of the proofs tend to support or controvert the fact or facts, the ascertainment of which is necessary for the proper judicial determination of the case. * * * [United States v. Edson Keith & Co., 5 Ct.Cust.Appls. 82, 83, T.D. 34128.]

What this case comes down to is a failure of proof, presumptive or otherwise, with respect to a tariff paragraph directly classifying these raincoats. Plaintiff has consistently claimed there is none. Defendant has offered no proofs that there is. These raincoats are nonenumerated articles which may be classified under paragraph 1558, as plaintiff alternatively claims, only after resort to paragraph 1559, as amended, which provides as follows:

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

As mentioned at the outset, plaintiff's primary claim is that these polyvinyl raincoats are similar in use to raincoats

of india rubber charged with duty under paragraph 1537(b). The record as to the use of the imported merchandise as a raincoat is itself nothing short of elemental. This court received exhibit 1 in evidence, defendant offered no objection, "for the purpose of illustrating to the Court the appearance of the material, and the use" of the imported merchandise. (R. 11.) Customs examiner Gaines testified that black vinyl raincoats are similar in use to raincoats of india rubber. In certain situations, he said, his office advisorily classified raincoats by similitude under paragraph 1537(b) and he never knew the collector to differ. In Jomac-North, Inc. v. United States, 48 Cust.Ct. 119, C.D. 2321 (1962), the First Division of this court sustained the collector's classification of coated fabrics, consisting of a rayon base fabric, coated with polyvinyl chloride material, used after importation in the manufacture of industrial rainwear, by similitude of use to manufactures of india rubber under paragraph 1537(b), as modified. If this were not enough, exhibit 1 is before us and, as our court of appeals said in Krusi v. United States, 1 Ct.Cust.Appls. 168, T.D. 31213:

> * * * When facts which determine the classification of imported merchandise are ascertainable and ascertained from an inspection of the goods themselves by the Board of General Appraisers, availing itself of the common knowledge and experience of which judicial notice may be taken, it can not be said that there is no evidence to support a finding of such facts. It would seem, however, that when the facts upon which proper classification depend are patent to the eye of the expert only and the board has no record evidence before it as to the nature, kind, and character of the goods, it can not classify them solely on its own expert knowledge and experience, and a finding based exclusively on such expert knowledge and experience would be without evidence to support it. To hold otherwise would make the board the final judge in many cases of contested classification and would in effect deprive the importer of the right of appeal conceded by Congress. In this case an inspection of the goods, aided by nothing more than the facts of common knowledge and experience of which judicial notice may be taken, shows that they are appliqued, and the finding of the board to that effect was justified by the evidence which the goods themselves furnished. [Pp. 169, 170.]

There is no need here to consider similitude by material since nothing of record establishes that these polyvinyl raincoats are similar in use to any other article enumerated in the tariff act. But cf. Beauti-Vue Products Company v. United States, 55 Cust.Ct. 282, C.D. 2591, decided on rehearing, Id v. Id, 58 Cust. Ct. C.D. 2987; Rubber Fabrics Co. v. United States, 48 Cust.Ct. 422, Abstract 66695. An article is enumerated within the similitude provision of paragraph 1559 if its use is similar to an article generally enumerated in the tariff act, such as paragraph 1537(b), no less than if the similitude goes to an *eo nomine* designated article. S. S. Kresge Co., et al. v. United States, 46 CCPA 100, C.A. D. 707. Defendant does not deny or even argue the fact that the imported merchandise consists of polyvinyl raincoats similar in use to raincoat manufactures of india rubber. To the contrary, it pitched its defense to argument that plaintiff should disprove the possibility of direct classification under a tariff paragraph other than the assessed paragraph 1539(b). For the reasons set forth above, we find this position untenable.

On this record, we hold that these polyvinyl raincoats are similar in use and chargeable with the same rate of duty as raincoat manufactures of india rubber under paragraph 1537(b).

The protest claim under paragraph 1537(b) is sustained. Judgment will enter accordingly.

WATSON, Judge, concurs.