**DOLLAR TRADING CORP., Plaintiff,**
v.
**The UNITED STATES, Defendant.**
C.D. 4290, Protest No. 66/42298–31186–65.

United States Customs Court,
Second Division.
Nov. 1, 1971.

Tompkins & Tompkins, Staten Island, N. Y. (Allerton deC. Tompkins, Staten Island, N. Y., of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen., Civ. Div., Customs Section, New York City (John A. Winters, Trial Atty., New York City), for defendant.

Before RAO, FORD, and NEWMAN, JJ.

RAO, Judge:

The merchandise involved in this case consists of two items, described on the invoice as wood hole saws and as metal hole saws, respectively.

The so-called wood hole saws were assessed with duty at 10 per centum ad valorem under item 649.49, Tariff Schedules of the United States, as interchangeable tools for hand tools or for machine tools, not suitable for cutting metal, other than hand tools or wire-drawing dies and extrusion dies for metal. The so-called metal hole saws were assessed at 21 per centum ad valorem under item 649.45, as interchangeable tools for hand tools or machine tools, suitable for cutting metal.

Various claims are made in the protest as amended. Plaintiff relies primarily on the claim that the merchandise is classifiable under item 649.41 of the tariff schedules, as interchangeable tools which are files and rasps, includ-

ing rotary files and rasps. It is alternatively claimed that the merchandise is dutiable under item 649.25, as blades for mechanical or non-mechanical saws, or under item 683.20, as parts of hand-directed or -controlled tools with self-contained electric motors. All other claims have been abandoned.

The pertinent provisions of the tariff schedules are as follows:

Schedule 6, Part 3, Subpart E:

```
Schedule 6, Part 3, Subpart E:
  Subpart E headnotes:
*       *       *       *       *       *
    3. The provisions for "interchangeable tools
 for hand tools or for machine tools" cover in-
 terchangeable tools which are designed to be
 fitted to hand tools or machine tools and which
 cannot be used independently, and include, but
 are not limited to, interchangeable tools for press-
 ing, stamping, drilling, tapping, threading, boring,
 broaching, milling, cutting, dressing, mortising or
 screw-driving, but do not include saw blades,
 knives, or cutting blades, and do not include
 holding or operating devices even if attached to
 such interchangeable tools.
*       *       *       *       *       *
    Non-mechanical saws, blades for mechanical or
    non-mechanical saws (including blades in
    continuous lengths), and metal teeth or cut-
    ting segments and other metal parts of such
    saws and blades:
*       *       *       *       *       *
       Blades for mechanical or non-mechanical
       saws:
*       *       *       *       *       *
  649.25  Other blades .............7.5% ad val.
*       *       *       *       *       *
    Interchangeable tools for hand tools or for ma-
    chine tools, including dies for wire drawing,
    extrusion dies for metal, and rock drilling
    bits:
  649.41  Files and rasps, including ro-
           tary files and rasps ....  6% ad val.
  649.43  Cutting tools (except tools
           provided for in item 649.-
           41) with cutting part con-
           taining by weight over 0.2
           percent of chromium, mo-
           lybdenum, or tungsten, or
           over 0.1 percent of vana-
           dium  ................30% ad val.
         Other:
  649.45  Suitable for cutting metal ..21% ad val.
         Not suitable for cutting met-
           al:
  649.47  For hand tools ........22.5% ad val.
  649.48  Wire-drawing dies and ex-
           trusion dies for metal 15% ad val.
  649.49  Other ...............10% ad val.
*       *       *       *       *       *
    Part 5
*       *       *       *       *       *
  683.20  Hand-directed or -controlled
           tools with self-contained
           electric motor, and parts
           thereof .............11.75% ad val.
```

At the trial, Mortimer Schwartz, president of the plaintiff corporation, testified that his firm is engaged in the importation of hand tools and power tool accessories for sale by Coastal Abrasive & Tool Corp. Since 1946, he has been specializing in precision tools, power tools, and medical and dental tools. He writes instructions for their use and works with the advertising agency to develop the best selling points. He was familiar with, had initiated the purchase of, and had subsequently sold the merchandise involved herein.

The witness produced a sample of the so-called wood hole saw which he stated had come from one of four importations thereof, all of which had been the subject of the same type of order. It was received in evidence as exhibit 1. The witness then produced a sample of the so-called metal hole saw which defendant conceded was illustrative of the shape of the imported merchandise but not its chemical characteristics. It was received in evidence as exhibit 2.

Both exhibits are metal cylindrical articles about 3½ inches long and ¼ inch in diameter. One end has a pointed tip and is fluted for about ¾ inch. Following the fluted part for approximately 1¾ inches is a portion with raised teeth (exhibit 1) or a spiral cut (exhibit 2). The balance, about 1 inch, is a round shank for insertion into a power source. Mr. Schwartz stated that the teeth in exhibit 1 are formed by hitting the metal and raising it. Those in exhibit 2 are formed in the same fashion but the metal is twisted afterwards.

Mr. Schwartz testified that exhibit 1 is used with a power source, such as an electric drill, flexible shaft, or drill press, to form, shape and smooth materials by the abrading action of the teeth. It can be employed to form a pattern, contour, shape, or design, and to elongate holes. Its operation can be commenced at the edge of a piece of wood or on any part of a surface not over one-half inch thick. In the latter case, the fluted tip pierces the surface,

creating a hole, after which the tool can be guided to form any pattern or shape desired. The hand holds the electric drill and guides the tool in an in-and-out motion to prevent heat build-up and permit the waste material (wood chips) to escape freely. According to the witness, exhibit 1 has the same tooth formation as a rotary rasp and in his opinion is a rotary rasp. He said that the fluted tip is incidental, a convenience for commencing use of the tool on a flat surface.

He stated that his firm sells twist drills and that a twist drill is a piece of metal that has a point and a spiral from the point perhaps 1¼ inches from its base. It is used for making holes. As it cuts, portions of the material escape through the fluted part of the drill. It will go as deeply into the material as the length of its fluting.

The witness said that exhibit 1 is impractical for drilling holes, on the ground that if it penetrates beyond half an inch, it commences to burn and must be removed to let the accumulations run out.

Mr. Schwartz testified that exhibit 2 has a round shank, a file pattern on the body, and a flute and point at the fore. It is used to form, smooth and shape metal by the abrading action of its teeth in the same fashion and with the same power sources as exhibit 1. It can be used to remove burrs, shape metal, elongate holes, or create a pattern or design in metal that is reasonably soft. The tip permits entering the work piece at any given place on the surface as deep as one-half inch. The tool is operated with a sawing motion as in exhibit 1. It has the same file pattern as a rotary file, and in the witness' opinion, it is a rotary file.

The witness produced a sample of a round rasp that his firm sells and said that it could be used to make holes in wood, but awkwardly. It can make a pattern in a piece of wood.

Mr. Schwartz stated that exhibit 1 is a rotary rasp and exhibit 2 a rotary file because they are made on the same machinery that makes rotary rasps and files, perform the same functions and are used in the same fashion. The only characteristic distinguishing them from conventional rotary rasps and files is the incidental tip.

Frank Belcastro, called as a witness by defendant, testified that he is production superintendent of Avildsen Tools & Machines, which manufactures drills, reamers, and end mills which are sold throughout the country. He has been with the company 13 years and is responsible for the production of these tools. He had previously made parts for linotype machines and has a workshop in his home.

The witness has worked with drills and defined a drill as a tool that will penetrate steel or wood or other material from an upright position and will make a hole. In his opinion the portion of exhibit 2 which has a point and two flutes is a drill. The witness worked with rotary files when he made parts for linotype machines, his company uses them in the machine shop, and he uses them in connection with his hobby. In his understanding a rotary file is a cylindrical file, which may be tapered, that will remove metal in a hole that is already drilled and make an indent in steel. A rasp will do the same in different material. The witness had never seen an item like exhibit 2 until it was shown to him a day or two before trial. In his opinion it does not fall within the category of a rotary file or rasp because of the flutes and drill portion in front. He had never seen a tool like exhibit 1 before but in his opinion it is not a rotary file or rasp for the same reason.

In his experience, a tool which drills a hole in a piece of wood and then cuts a pattern starting from the hole does not operate as a rotary file or rasp but resembles a wood router bit which drills through wood and then routs out a pattern. In his experience, a rotary file or rasp is used to elongate or enlarge a hole.

Defendant's second witness was Armand Bassi, acting chairman of the Mechanical Department of Brooklyn Technical High School. He has been a teacher of machine shop for 40 years and has had experience as a machinist, toolmaker, and instrument maker, in the course of employment with Gavin Milling Machines, Ford Instrument, Western Electric, Duplex Motion Pictures Industries, and Kleinschmid.

He testified that a rotary file has a specially shaped head with teeth on it and a shank that can be used in a drill, drill press, or flexible shaft. A rotary rasp differs only in the shape of the teeth. The function of these tools is to remove irregularities or excess material after a hole has been cut.

The witness said that the front portions of exhibits 1 and 2 are drills and the shank parts are rotary rasps or files. He has never used a file which had a drill in front. In his opinion using exhibit 1 or 2 to drill a hole and then cut out a pattern is not an operation normally done with a rotary file or a rotary rasp.

The witness has never bought or sold articles like exhibit 1 or 2. He has seen them displayed in hardware stores but did not know under what name they were bought and sold.

There was received in evidence as exhibit B a catalog of Coastal Abrasive & Tool Company offering merchandise such as exhibits 1 and 2 as drill saws. Mr. Bassi said that was the wrong title for these tools. He testified that a saw is a thin blade with teeth on one edge, or if it is circular, on its circumference, and that blades for saws are hardened pieces of thin metal with teeth on one edge. In his opinion exhibits 1 and 2 are not saws nor blades for saws because they are cylinders with teeth and are not thin blades.

The principal issue in this case is whether the merchandise represented by exhibits 1 and 2 consists of interchangeable tools for hand tools or machine tools, suitable for cutting metal (exhibit 2) or not suitable for cutting metal (exhibit 1), as found by the classifying officer, or as interchangeable tools which are rotary files and rasps, as claimed by plaintiff.

It is, of course, well settled that the administrative classification is presumptively correct and that the burden rests on plaintiff to overcome that presumption and establish affirmatively that the claimed classification is proper. Hayes-Sammons Chemical Co. v. United States, 55 CCPA 69, C.A.D. 935 (1968).

The exhibits and the testimony in the instant case demonstrate that the imported articles are cylindrical tools with fluted tips which are drills or twist drills and with a body having the spiral cut or raised teeth of a file or a rasp. Plaintiff claims that the fluted tips are merely incidental to the file or rasp portion, a convenience for commencing use of the tool on the surface of the workpiece. Defendant contends that the merchandise is a combination of a twist drill and a rotary file or rasp, and is therefore more than a rotary file or rasp and not classifiable as such.

Testimony at the trial and dictionary definitions indicate that while a rasp is a coarse file, it is distinct from the tool known as a drill:

Webster's Third New International Dictionary (1968):

file * * * 1a: a hardened steel tool in the form of a bar or rod that has cutting ridges on its surface made by chisel cuts and that is used for forming or smoothing surfaces, esp. of metal by means of the cutting or abrading action of the ridges.

rasp * * * 1: a course file on which the cutting prominences are distinct points raised by the oblique stroke of a sharp punch instead of lines raised by a chisel (as on a true file)—called also *rasp-cut file.*

rotary file: a file of cylindrical or modified cylindrical form that is given a rotating rather than a reciprocating motion.

drill * * * 1a: an instrument with an edged or pointed end used for making holes in hard substances; *specif*: a tool that cuts with its end by revolving (as in drilling metals) or by a succession of blows (as in drilling stone).

twist drill: A drill having one or usu. two deep helical grooves extending from the point to the smooth portion of the shank.

The testimony indicates that the function of a drill is to make holes and that of a file or rasp to enlarge holes or remove material in a hole already drilled.

The articles before the court are combinations of drills and rasps or files. As to the classification of combination or multifunction articles, this court stated in Robert Bosch Corp. et al. v. United States, 63 Cust.Ct. 96, C.D. 3881 (1969), at pp. 103–104:

The principle is well settled that where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute. Cragston [Cragstan] Corporation v. United States, 51 CCPA 27, C.A.D. 832 (1963); United States v. The A. W. Fenton Company, Inc., 49 CCPA 45, C.A.D. 794 (1962); Garrard Sales Corp. v. United States, supra, [35 CCPA 39, C.A.D. 369 (1947)]; and Hirsch & Co. et al. v. United States, 4 Ct.Cust.Appls. 82, T.D. 33365 (1913). By contrast where the difference is in the nature of improvement or amplification, and the essential character is preserved or only incidentally altered, the applicable rule is as expressed in Nootka Packing Co. et al. v. United States, 22 CCPA 464, T.D. 47464 (1935), that an unlimited *eo nomine* statutory designation includes all forms of the article in the absence of a contrary legislative intent

or commercial designation. United States v. National Carloading Corp. et al., 48 CCPA 70, C.A.D. 767 (1961); United Carr Fastener Corporation v. United States (Northern Screw Corp., Party in Interest), 54 CCPA 89, C.A.D. 913 (1967).

In the *Bosch* case it was held that a solenoid switch which performed the mechanical function of engaging a motor vehicle starter into gear with the flywheel in addition to the electrical function of causing the current to flow from the battery to the ignition system was more than an electrical switch since both its functions were significant.

In V. Alexander & Company, Inc. v. United States, 59 Cust.Ct. 510, C.D. 3212, 276 F.Supp. 573 (1967), and Castelazo & Associates et al. v. United States, 61 Cust.Ct. 391, C.D. 3639, 294 F.Supp. 81 (1968), it was held that a combination article designed to perform the functions of both a shovel and a pick was not classifiable under a designation (shovel) which provided for only one of its two functions.

In an earlier case, Krueger & Hoch v. United States, 2 Cust.Ct. 68, C.D. 88 (1939), it was held that an article consisting of a small piece of metal having a point, a shoulder, and a screw thread, which was screwed into the back of a molding after which the whole was hammered against the wall, was a combination nail and screw and was not classifiable as a nail.

By contrast in United Carr Fastener Corporation v. United States (Northern Screw Corp., Party in Interest), 54 CCPA 89, C.A.D. 913 (1967), it was held that an article called a "Tee-Nut", consisting of metal prongs and a barrel threaded to receive and retain the thread of a bolt, designed to be driven into wood members to serve as a fastening means, replacing an older method of performing the same function with a nut, bolt and washer, eliminating the use of a washer, was an improved nut and not a combination article which was more than a nut. The article in that case was

designed to do but one function—join objects together.

In Astra Trading Corp. v. United States, 56 Cust.Ct. 555, C.D. 2703 (1966), it was held that a "Flashlight Tool", consisting of a screwdriver with an illuminating feature was not more than a screwdriver since the illuminating feature did not give the article a use in addition to its intended use as a screwdriver.

In the instant case, each of the articles is a combination of two well-known and distinct tools—a drill and a rotary file or rasp. The combined articles perform the functions of both tools separately. These operations may be done successively on the same workpiece. Such an article cannot be classified under a designation which provides for only one of its functions. It is more than a rotary file or rasp. It also operates as a drill for the purpose of creating holes. Both functions are significant. Therefore, the imported merchandise is not subject to classification under item 649.41, as a rotary file or a rotary rasp.

Plaintiff's alternative claims are untenable. Exhibits 1 and 2 are not blades for saws. They are not used in saws but are interchangeable tools used in electric drills, drill presses and flexible shafts. They are cylindrical tools and not blades.

■ The claim that exhibit 1, which was assessed under item 649.49 at 10 per centum ad valorem, is dutiable under item 683.20 at 11.75 per centum ad valorem is not properly before the court since an importer may not protest a rate of duty as being too low. Fletcher v. United States, 92 F.2d 713, 25 CCPA 195 (1937); The Dow Chemical Company v. United States, 64 Cust.Ct. 471, C.D. 4022 (1970), and cases cited.

No facts have been presented in support of the claim that exhibit 2 is classifiable under item 683.20, as a hand-directed or -controlled tool with self-contained electric motor, or that it is chiefly used as a part thereof.

■ Defendant states in its brief that merchandise such as exhibit 1 is classifiable under item 649.47 or 649.43 depending upon its chemical composition and requests that plaintiff's claims be overruled without affirming the classification. Since the collector classified this merchandise under item 649.49, as interchangeable tools for hand tools or machine tools, not suitable for cutting metal, other than hand tools or wire-drawing dies and extrusion dies for metal, it is presumed that he found all facts necessary to support his classification. Novelty Import Co., Inc. v. United States, 53 CCPA 28, C.A.D. 872 (1966). The presumption attaches to every subsidiary fact necessary to support his ultimate conclusion that the goods were classifiable under that particular category. United States v. New York Merchandise Co., Inc., 435 F.2d 1315, 58 CCPA 53 (1970). However, the presumption does not extend to a new claim made by the Government and the burden rests upon the Government to prove it by competent evidence. United States v. White Sulphur Springs Co., 21 CCPA 203, T.D. 46728 (1933); United States v. R. J. Saunders & Co., Inc., 42 CCPA 128, C.A.D. 584 (1955); The Bendix Corporation v. United States, 57 Cust.Ct. 184, C.D. 2759 (1966); J. M. Rodgers Co., Inc. v. United States, 59 Cust.Ct. 91, C.D. 3084, 273 F.Supp. 442 (1967), judgment amended, 60 Cust.Ct. 42, C.D. 3251 (1968).

In the instant case the evidence presented does not establish that the merchandise is other than that found by the classifying officer.

On the record presented, we hold that the merchandise was properly classified under item 649.45 (exhibit 2) or under item 649.49 (exhibit 1). The protest is overruled and judgment will be entered for the defendant.

FORD and NEWMAN, JJ., concur.